[File No. 6862]

NORTHERN STATES POWER COMPANY, a Minnesota Corporation, Respondent, v. PUBLIC SERVICE COMMISSION of the State of North Dakota, et al., Appellants.

(13 NW(2d) 779)

Opinion filed March 6, 1944

*C. F. Kelsch,* Assistant Attorney General, for appellant.

*Nilles, Oehlert & Nilles,* for respondent.

BURKE, J. This appeal concerns an order of the Public Service Commission fixing rates to be charged by the Northern States Power Company at Fargo. Upon a former appeal in this case (71 ND 1, 298 NW 423) this court held that the Commission had erred in computing the fair value of the company's properties and ordered that the entire proceeding be returned to the Commission for further consideration in the light of the decision of that appeal. After a reconsideration the Commission issued a new order. The Company appealed from this order to the District Court of Cass County. The District Court held that the appeal was well taken and made and entered its judgment requiring the Commission to amend its new order in the following respects:

1. That it set aside that part of its order fixing the company's rate

of return at 5.5 per cent of fair value and fix a new rate at not less than 6 per cent of fair value.

2. That it set aside its order allowing the company depreciation upon the property of the company's electric property at 3.5 per cent and allow a depreciation of not less than 4 per cent.

3. That it vacate and set aside its order directing the company to present proposals to the Commission for refunding excess charges which have been collected and deposited in court.

4. That it set aside its finding of fair value and treat reproduction cost depreciated as the principal factor in making a new finding of fair value.

5. That in computing fair value, the Commission should give weight to historical cost undepreciated.

6. That it include the cost of a new steam plant in the rate base applicable to the year 1938.

7. That it set aside its establishment of separate rate bases for the years ending December 31, 1938 and December 31, 1939, and make the rate base established of December 31, 1937 applicable for the three subsequent years.

8. That it make allowance for increased price levels in establishing the rate base applicable to the year 1941 and subsequent years.

9. That after fixing a just rate base and a lawful rate of return, it permit the Company to originate and file a set of rate schedules which will produce the earnings to which the company is entitled by law, subject to the right of the Commission to set aside any rates so prescribed which are discriminatory or otherwise unlawful.

10. That it allow the company a return of 6 per cent on the unamortized portion of the cost of the lease on the steam plant site.

The Commission has appealed from the judgment of the District Court. The questions before us upon this appeal are limited to those which arise upon a consideration of the propriety of this judgment.

We shall direct our attention first to the attack made upon the rate of return which was fixed by the Commission at 5.5 per cent of fair value. This attack is twofold. In the order from which the former appeal was taken the Commission had fixed the rate of return at 6 per cent of fair value. The company did not appeal from that part of the

order. It now contends, that as to those of its parts which were not challenged upon the former appeal, the order became final, and that after that appeal the Commission was without power to amend the original order except as to those matters upon which amendments had been directed by order of the court. The company also urges that a rate of return of less than 6 per cent is inadequate and confiscatory.

The trial court found "The second hearing by the Commission was not a trial de novo. It was to correct errors pointed out by the Supreme Court. If that is so then the rate base fixed in that proceeding, by express order of the Supreme Court was to become effective as of the first billing subsequent to March 11, 1938, and no order fixing a rate base could be made for three years from that date." Sess Laws 1937, § 6, chap 205, and Sess Laws 1937, § 2, chap 203.

It is true, as the trial court indicated, that this court ordered that the case be returned to the Commission for the purpose of correcting its order as to specific matters in which this court declared that the Commission had exceeded its authority. This court considered and decided the questions which were before it upon the appeal. The order was necessarily limited and it cannot be interpreted as prohibiting a reconsideration, by the Commission upon regaining jurisdiction of the case, of those parts of the original order which were not challenged upon the first appeal. The power of the Commission to amend its orders rests entirely upon statutory authority. Section 4609c32 Supp to Compiled Laws 1925 provides:

"The commissioners may, at any time, upon notice to the public utility affected and after opportunity to be heard as provided in the case of complaints, rescind, alter or amend any decision made by it. Any order rescinding, altering or amending a prior order or decision shall, when served upon the public utility affected, have the same effect as is herein provided for original orders or decisions."

This statute clearly gives the Commission the power to amend its orders at any time subject to the requirement that it give the affected utility notice of its intention to amend and an opportunity to be heard.

The notice which was served upon the company prior to the hearing in this case provided: "Notice is hereby given that a public hearing will be had . . . for the purpose of the reconsideration and amend-

ment of its orders . . . pursuant to the decision of the Supreme Court on appeal . . . *and* . . . evidence will be received on behalf of the Commission and of the said company additional to that heretofore introduced relative to the question of said rates and to the operation, property and condition of the said company up to and including the 31st day of December 1940." We think that by this notice the Commission clearly indicated that it intended to offer additional evidence upon all matters entering into the rate structure. Such a notice of necessity carried with it the implication that the Commission would consider and act upon that new evidence. We think therefore that the notice was sufficient to vest the Commission with jurisdiction to reconsider the question of a proper rate of return. The question then is whether the Commission's finding that $5\frac{1}{2}$ per cent of the valuation was a reasonable rate of return is in accord with the evidence. The finding of the Commission upon this question is as follows:

"The Commission recognizes that the utility has a right to such rates as will permit it to earn a fair return on the fair value of the property which it employs for the convenience and service of the public which, should, at least, be equal to that generally made at the same time and in the same general part of the country on investments in other business undertakings which are attended by like risks and uncertainties; but, that the utility has no constitutional right to profits such as are realized or anticipated in highly profitable enterprises or speculative ventures; that after a careful consideration of the present money market; the yield on corporate and government bonds, the prevailing rate of interest, the rate of return realized at this time in the territory in which the utility operates from investments made in other business undertakings, which are attended by like risks and uncertainties, and the fact that this utility refinanced its bonded indebtedness, thereby reducing its interest rates from 5 and 6 per cent to 3.5 per cent, the Commission finds and determines from all the facts and attendant circumstances of this case, that a rate of 5.5 per cent is and should be adequate."

There is no question but that the Commission has correctly stated the rule as to what a reasonable rate of return is. It is also true that the evidence which it considered are proper matters to consider in

judging the reasonableness of the rate. We have searched the record however and have failed to find any evidence as to such matters as the present money market, the yields on corporate and government bonds, the prevailing rate of interest and the rate of return in the same locality of businesses with similar risks. In fact of the items mentioned, the only one which we find in the evidence is the refinancing of 90 per cent of the company's funded debt at a rate of 3.5 per cent. And as to this, it is not pointed out what proportion of the capital structure is represented by the funded debt.

It is clear that in reaching its conclusion as to a fair rate of return the Commission gave consideration to evidence outside the record. In so doing it acted beyond the scope of its authority and its order reducing the rate of return to 5.5 per cent is void. State ex rel. Hughes v. Milhollan, 50 ND 184, 195 NW 292. This finding does not prohibit the Commission from fixing the return at a rate other than 6 per cent if evidence taken at a hearing held after due notice, should justify it.

In its original order the Commission had fixed the rate of depreciation allowable to the company's electric department at 4 per cent. In its second order it reduced this rate to $3\frac{1}{2}$ per cent. The company urges that the Commission was without jurisdiction to make this amendment and that the percentage of depreciation so allowed is not sustained by the evidence and is unreasonable. What we have said with respect to jurisdiction upon the previous question applies here and the only question therefore is whether this allowance is reasonable in the light of the evidence. The records show that the company in its accounting had made a practice of charging a 4 per cent straight line depreciation. It also shows that in the original hearing in this case the Commission stipulated that a depreciation rate of 4 per cent for the electric properties was reasonable. The only evidence in the record which suggests that a lower rate might be proper is the testimony of Mr. Ulteig, engineer for the Commission, who stated that in computing reproduction cost depreciated, he and the company's engineer agreed to take the figure for October 1, 1937 and add thereto the actual cost of the net plant additions depreciated at the rate of 3.5 per cent per annum from the date of acquisition. The object of this computation was to reach a figure which would properly reflect

the physical condition of almost new property. There is no evidence that such a rate would, if spread over the entire life of the property, be adequate. It is our conclusion therefore that the Commission's order in this respect must be set aside.

At the time the company appealed to the District Court from the Commission's original order, the Court directed the company to deposit with the clerk of the court the sums of money it collected from its customers in excess of the rates fixed by that order. These deposits have been made from month to month and a very large amount of money has now accumulated in the custody of the clerk. The second order of the Commission directed the company to file with the Commission a plan for making refunds which would be due the company's patrons upon the application of the new rates. The company contends that in making this order the Commission exceeded its jurisdiction. In this contention the company is clearly correct. These funds are in the custody of the Court and it has exclusive jurisdiction over them. The Commission is of course entitled to notice of and a hearing on any proposal presented to the Court in this connection.

We turn next to a consideration of the company's criticisms of the Commission's finding of a rate base or "fair value."

Preparatory to its consideration of fair value the Commission made findings as to the reproduction cost and the historical cost of the company's property and the per cent condition of such property as of December 31 in each of the years 1937, 1938, 1939 and 1940. By the years and departments these findings were as follows:

|  | 1937 | 1938 | 1939 | 1940 |
|---|---|---|---|---|
| Electric Dept. | | | | |
| Historical Cost | $1,672,813 | $2,459,928 | $2,468,362 | $2,490,530 |
| Reproduction | $1,934.102 | $2,721,052 | $2,729,430 | $2,751,686 |
| Per cent condition | 83.21% | 89.06% | 86.82% | 84.31% |
| Steam Heating Dept. | | | | |
| Historical Cost | $345,039 | $374,548 | $375,230 | $372,648 |
| Reproduction Cost | $422,633 | $452,142 | $452,824 | $450,242 |
| Per cent condition | 79.82% | 84.87% | 81.44% | 78.88% |
| Gas Dept. | | | | |
| Historical Cost | $1,107,627 | $1,116,016 | $1,126,634 | $1,138,234 |
| Reproduction Cost | $1,359,804 | $1,369,772 | $1,379,387 | $1,390,990 |
| Per cent condition | 81.66% | 79.58% | 76.94% | 74.11% |

In its order establishing the rate base the Commission stated that it had "considered the historical cost, the cost of reproduction as allocated to the utility's North Dakota properties for each department as of the 31st day of December the per cent condition of the properties of each department or said department as established by the undisputed testimony of the chief engineer, which percentages are set out herein; and that after giving the historical cost, the cost of reproduction, the per cent condition of the properties of each department as of December 31 of each year and all other relevant facts and circumstances of record such consideration and weight as the same, in the judgment of the Commission, justly and equitably deserve, the Commission finds and determines that the fair value of the properties of each department as of December 31 of each year were as follows:

|  | 1937 | 1938 | 1939 | 1940 |
|---|---|---|---|---|
| Electric Dept. | | | | |
| Fair value as of the 31 day of December | $1,800,000 | $2,590,000 | $2,600,000 | $2,625,000 |
| Accrued depreciation | 302,220 | 283,346 | 342,680 | 411,862 |
| | $1,497,780 | $2,306,654 | $2,257,320 | $2,213,138 |
| Steam Heating Dept. | | | | |
| Fair value as of the 31 day of December | $384,000 | $414,000 | $415,000 | $412,000 |
| Accrued depreciation | 77,491 | 62,638 | 77,024 | 87,014 |
| | $306,509 | $351,362 | $337,976 | $324,986 |
| Gas Dept. | | | | |
| Fair value as of the 31 day of December | $1,110,000 | $1,120,000 | $1,130,000 | $1,140,000 |
| Accrued depreciation | 203,574 | 228,708 | 260,578 | 295,146 |
| | $906,426 | $891,296 | $869,422 | $844,854 |

It is apparent from an analysis of the foregoing figures that insofar as the electric and the steam-heating departments were concerned, the Commission computed fair value undepreciated by taking a round figure average of reproduction cost new and historical cost new and then depreciated that result upon the basis of the per cent condition of the property in order to establish a rate base. The result is the same as if the rate base had been determined by giving equal weight to reproduction cost depreciated and historical cost also depreciated upon the basis of the physical condition of the property. A different

situation exists with respect to the gas department. There the rate base reflects an almost exclusive consideration of historical cost depreciated.

The company has challenged these findings upon the grounds that the Commission did not give sufficient weight to the factor of reproduction cost in applying the fair value formula and that it erred in giving effect to depreciation after finding fair value undepreciated.

In the former appeal in this case (71 ND 1, 298 NW 423) we held that the fair value formula as set forth in Smyth v. Ames, 169 US 466, 42 L ed 819, 18 S Ct 418, and as modified by subsequent decisions of the Supreme Court of the United States had been adopted by the legislature of this State in 1919 as the formula for determining rate bases for public utilities. There can be no doubt today, but that, insofar as the federal courts are concerned, the "ghost of Smyth v. Ames had been laid." Federal Power Commission v. Natural Gas Pipeline Co. 315 US 575, 86 L ed 1037, 62 S Ct 736; Federal Power Commission v. Hope Natural Gas Co. 320 US 591, 88 L ed 333, 64 S Ct 281. That circumstance, however, has no bearing upon the question before us now. We are concerned with the law of this State as enacted in 1919. In the decision in the former appeal in this case we gave extended consideration to the construction of this statute and we see no reason now to modify that construction.

In support of its contention that the Commission failed to give sufficient weight to reproduction cost in computing fair value the company places great reliance upon our statement that "in the absence of the proof of other circumstances which would tend to destroy its force such evidence (reproduction cost depreciated) obviously has more bearing upon the question of present value, than has evidence of original cost depreciated, and it was the Commission's duty to give due consideration to that evidence." 71 ND 1, 17, 298 NW 423. It is said that this statement requires that the Commission shall in all valuation cases give greater weight to reproduction cost than it does to historical cost. It is possible that we did not state our conclusions with sufficient clarity but certainly we did not intend to use language which could or would be so construed. We set aside the Commission's finding of fair value upon that appeal for the reason that it had given greater weight

to historical cost than it had given reproduction cost because it was "adhering to the precedent of this Commission."

In stating the principle involved we quoted with approval from the opinion of Mr. Justice Butler in McCardle v. Indianapolis Water Co. 272 US 400, 71 L ed 316, 47 S Ct 144, wherein he stated that the application of the fair value formula "does not mean that the original cost or the present cost or some figure arbitrarily chosen between the two is to be taken as the measure. The weight to be given to such cost figures and other items and classes of evidence is to be determined in the light of the facts of the case in hand." We then said that the establishment of a precedent which would require that greater weight be given to historical cost than to reproduction cost in every case is in itself arbitrary for the reason that such a precedent "creates an inflexible formula which denies to the evidence in a particular case its normal probative value." It follows that a rule which would require that greater weight be given to evidence of reproduction cost in every case would be equally arbitrary. A finding of value cannot be reached merely by the solution of an algebraic equation which is universal in its application. It is not fanciful to say that in many instances actual value may properly be found at levels which are below both reproduction cost depreciated and historical cost depreciated. This is particularly true where depreciation is based solely upon physical deterioration and in a field in which technical advances are being made with such rapidity that the toll taken by obsolescence far exceeds that taken by actual physical depreciation. We do not, however, suggest that this situation exists in the present case. Historical cost and reproduction cost are both major factors but the weight which shall be given to each in the fair value formula can only be determined by judgment exercised in the light of the circumstances in which they rest. That is the judgment which the Commission exercised in this case. Insofar as the electrical and steam heating departments of the company are concerned its judgment was that equal weight should be given to both factors. As we have already stated we did not say in the opinion upon the former appeal of this case that "greater weight" must be given to reproduction cost. What we said was, "in the light of the principle that fair value must include the increase in value

over original cost, the Commission *may not disregard evidence of reproduction cost depreciated or refuse to give such evidence weight as one of the major factors in reaching its conclusions."* 71 ND 1, 298 NW 423. Certainly in making the order which we are now considering, the Commission neither disregarded evidence of reproduction cost nor refused to give that evidence weight as one of the major factors in reaching its conclusions. The question therefore is, is the Commission's judgment at such variance with our own conclusions that we would be justified in upsetting it. We have no doubt but that we have the power to exercise our independent judgment of the evidence. In fact we must do so. State ex rel. Hughes v. Milhollan, 50 ND 184, 195 NW 292; Re Russell, 68 ND 447, 281 NW 239. Nevertheless, because of the technical nature of this proceeding and the long familiarity and experience of the Commission with the problems involved, its considered judgment is entitled to great weight in our evaluation of the facts. We have considered the evidence in the light of this principle and also in the light of the fact that evidence of reproduction cost is largely opinion evidence as distinguished from factual evidence and have reached the conclusion that due consideration of reproduction cost is reflected in the Commission's finding of fair value (undepreciated) for the company's electrical and steam heating departments.

As to the company's gas department a different situation exists. In reaching its finding of fair value (undepreciated) for this department the Commission gave almost no weight at all to evidence of reproduction cost. To illustrate: The historical cost of this department as of December 31, 1937 was found to be $1,107,627, the reproduction cost as of the same date is set forth as $1,359,804 and fair value (undepreciated) is fixed at $1,110,000. We think it quite clear from what we have already said that this finding cannot stand unless there is other evidence of value in the record to justify it. It does appear in the record, however, that the company did not want the rates in the gas department set at a level higher than would be necessary to earn a fair return upon the value as fixed by the Commission. We think it fair to assume that the company's moderation in this regard is due to the exercise of sound business judgment and that it is the opinion of its officers that a higher rate would not yield an increased return. We do not see how a department of the company can have a

higher value than the amount upon which it can earn a fair return at rates nicely adjusted to what the traffic will bear. We therefore agree with the Commission's valuation.

We turn next to the company's contention that it was error for the Commission to depreciate fair value. What the Commission did was to find fair value undepreciated upon a consideration of reconstruction cost and historical cost; both undepreciated, and other relevant evidence and then apply a depreciation factor based upon the physical condition of the property.

The result of the method followed by the commission was to give effect to reconstruction cost and historical cost both depreciated in the fair value formula. The company contends that this was error, asserting that it was improper for the Commission to depreciate historical cost before giving it effect in its finding of fair value. We do not agree. It is only property which is used or useful for the public service which may be included in the value inventory. Section 4609c37, 1925 Supp to Comp Laws 1913; § 2, chap 203, Laws of N.D. 1937. It follows that the entire cost of each item of property would have to be written out of the historical cost inventory at the time such items are retired from service unless proper deductions have been made each year through annual depreciation. Since the entire value of all expendable items of property must eventually be deducted from historical cost it would seem to be better business and accounting practice to cushion the effect of such deductions by apportioning them over the life of the property. In this case the company has given approval to this practice in its own accounting methods. Its records disclose that it has charged off an annual depreciation which will be sufficient in the aggregate to replace property retired from service. The amount which it has so charged has operated to decrease its investment pro tanto. The application of the company's theory to the circumstances of this case clearly discloses the fallacy which lies in its contentions. Here the figure found for historical cost undepreciated is in almost every instance greater than that found for reproduction cost depreciated. A finding of a rate base at some intermediate figure which the company says must be made would result in fixing fair value at a sum which would be greater than the amount which the company has invested and greater than the depreciated reproduction cost of the prop-

erty. We know of no theory upon which such generosity could be justified.

Next in order is the company's specification that the Commission erred in refusing to include the cost of the steam plant in the electric rate base for 1938. Preliminary plans for the construction of this plant were made early in 1938. Construction work was commenced in April and had progressed to the point where the plant was put into service in January 1939. The records shows that the company expended upon this project $683,543.44 in 1938 and the further sum of $105,918.69 in 1939 or a total of $789,372.13. The Commission refused to include any of these expenditures in the rate base for 1938, but did include them all in the 1939 rate base without regard to the time of the 1939 expenditures. It also allowed the company interest upon its construction costs. This interest was charged monthly upon the cumulative investment during 1938. In 1939 it was charged monthly but only upon the sum expended during each month. The practice followed was in accord with the Commission's rule, "That the period for which interest during construction may be charged shall be limited solely to the period of construction, because after the completion of new construction, the property is used in the public service and from then on is properly entitled to a fair return on such new investment." Our applicable statute reads:

"The Commissioners, for the purpose of ascertaining the reasonableness and justice of rates and charges of public utilities, . . . shall investigate and determine the value of the property of every public utility used and useful for the service and convenience of the public." (Section 4609c37, 1925 Supp to Comp Laws 1913; § 2, chap 203, Laws of N. D. 1937.)

We construed this section upon the former appeal in this case, saying, "The value which must be ascertained is the reasonable value of the utility's property used and useful for the public service at the time it is being so used." 71 ND 1, 298 NW 430. Clearly the property in question was not used or useful for the public service in 1938 and its value should not have been included in the rate base for that year. In support of its contention that this value should have been included the company has cited cases which hold that the value of immediately required betterments may be included in a rate base under a doctrine

of imminent use. New York & Q. Gas Co. v. Prendergast (DC) 1 F(2d) 351; Wisconsin Teleph. Co. v. Public Serv. Commission, 232 Wis 274, 287 NW 122, 132; State v. Tri-State Teleph. & Teleg. Co. 204 Minn 516, 284 NW 294. This doctrine applies where rates are being fixed for the future and the property in question will be used for the public service during the time in which the rates will be applicable. Here the situation is entirely different. In this case, insofar as this issue is concerned, the rates have been adjusted retroactively for a single year in which the property was not used for the public service. We think therefore that the Commission's order in respect to this new plant was proper except in its allowance of interest on construction costs in the year 1939. These costs were all included in the rate base as of December 31, 1938 and the allowance of both interest and a fair rate of return for that year is double compensation.

The company has also specified that it was error for the Commission to establish separate rate bases for the years 1938, 1939 and 1940. It rests this contention upon § 6 of chapter 205, Laws of N.D. 1937 which provides:

"No petition or order for valuation and/or revaluation shall be filed or made more than once in every three years."

In this case there has been but a single order involved. That order, it is true, has been amended but the amendments have been made necessary by reason of the company's appeal. We see nothing in the above statute which would prohibit the Commission from including in its final order separate rate bases for the years the investigation as to value was in progress where the facts warrant such action. In its brief the company states, "the Commission has sought to deprive the company of the cost of the steam plant in the 1938 rate base. In all probability the company is correct in its surmise that the Commission adopted the plan of separate rate bases for the years the investigation was in progress so that it might exclude the cost of the steam plant from the rate base until such time as the steam plant was used for the service of the public. In any event we think this act of the Commission was proper. We know of no reason why the public should be required to pay a rate of return, including depreciation, upon the value of a plant until the plant is completed at least to an extent where it may be used in the public service. The allowance of interest upon

construction costs until the time the plant went into operation was sufficient compensation to the company. Ordinarily the making of rates and findings of value look to the future and to the extent that the prophecies of the rate making body are inaccurate the rates are inexact. In this case, because of the lapse of time, the Commission could substitute experience for prophecy in fixing rates for the years 1938, 1939 and 1940 and arrive at figures which are exact. It clearly acted in the public interest in doing so.

Next it is urged that the Commission erred in refusing in the rate bases applicable to 1941 and the future to make allowances for increased price levels. The record shows that evidence of reproduction cost as of December 31, 1940 was reached by taking reproduction cost as of October 1937 and adding thereto the actual cost of the net plant additions. This plan of valuation was agreed to by Mr. Ulteig and Mr. Rice the valuation engineers for the Commission and the Company respectively. In its Exhibit 1, however, the company computed reproduction cost for the year 1941 by taking the agreed figure for December 31, 1940, and adding ten per cent thereto to allow for an estimated rise in prices. The Commission refused to allow this estimated increase. The testimony upon this subject is very meager. Mr. Crocker, witness for the company, merely stated that the increase had been made as an estimated increase in the cost of materials and equipment. Mr. Ulteig witness for the Commission conceded that there had been some rise in prices. In addition to this testimony there is the fact that the Commission did allow an increase in operating expenses. We have no doubt as to the truth of the claim that there has been a rise in prices. Nor do we have any doubt but this rise has been in a large measure due to an artificial shortage of labor and materials created by the national emergency. The right of the company to have all increases in prices reflected in the computation of reconstruction cost is not without limitation. Our statute specifically provides that "in valuing the property upon the basis of the cost to reproduce the same, unit prices of material and labor entering into the construction shall be based upon the average prices of a sufficient period of years to secure normal results." Section 4609c37 subsec. (g) 1925 Supp to Comp Laws of N.D. 1913. This statute recognizes that if there is to be any stability to rates based upon fair value, it is general

price trends and not intermediate or abnormal fluctuations in price which must enter into the computation of reproduction cost. We think this principle is sound and that it is applicable to the instant case. The rise in prices since October 1940 cannot be considered as due to the free play of normal economic forces. Nor can it be anticipated that the increased price levels will be maintained after the causes which have produced them disappear. Considerations of the value of durable things must always include the probable continuance of their worth and the Commission's refusal to give effect to a reproduction cost based .upon theoretical prices for unavailable goods and labor cannot be considered as a refusal to give effect to an increase in the value of an operating plant.

Finally it is urged that the Commission erred in prescribing a detailed schedule of rates for electric service. The company says that it alone has the right to propose and initiate specific rates, subject to the right of the Commission to veto its proposals if they are, in the judgment of the Commission, excessive or discriminatory. It does not .appear to us that such contention squares with our statutes. Section 4609c4, Supp to Comp Laws of 1913 provides:

"The commissioners shall have the power, after notice and hearing, .to enforce, *originate,* establish, modify or adjust and promulgate, tariffs, rates, joint rates, tolls and charges of all public utility corporations. . . ."

Section 5, chapter 205 Laws of N. D. 1937 provides:

" . . . The Commission is hereby directed and required in any proceeding in which temporary rates are fixed, determined and prescribed under this Section, to consider the effect of such rates in *fixing, determining* and prescribing rates to be thereafter charged and collected. . . ."

It seems to us that the language of these statutes is so clear that there is no room for any controversy as to a proper construction. They do give the Commission the power to initiate schedules of rates.

The judgment of the District Court is therefore affirmed as to those portions of it which (1) require the Commission to vacate its order fixing the company's rate of return at 5½ per cent of fair value, (2) require the Commission to vacate its order fixing the rate of depreciation for the electric property at 3.5 per cent, (3) require the Commis-

sion to vacate its order directing the company to present to it proposals for disbursing funds which have been impounded in the custody of the Court and (4) require the Commission to allow the company interest upon the unamortized portion of the cost of the lease of the steam plant site. Upon the provision of the judgment last mentioned no error was specified.

Upon all other matters in controversy the judgment is reversed. The case will accordingly be returned by the District Court to the Public Service Commission for the correction of its order in accordance with this opinion. In revising its order the Commission may fix the rate of return at 6 per cent of fair value, fix the allowable rate of depreciation at 4 per cent, make the proper allowance for interest upon the unamortized portion of the cost of the lease of the steam plant site and adjust the schedules of rates to conform to these changes without the necessity of another hearing. If the Commission determines to reconsider the questions of a reasonable rate of return and of a rate of depreciation it may do so at a hearing held after due notice to the company. The amended order of the Commission will become effective as of the effective date of the order from which this appeal was taken. If the amended order fixing schedules of rates discloses that the company has been collecting excessive charges since the original order of the Commission in this case, the difference between the actual charges made and the proper charges as disclosed by the rates as fixed by the Commission shall be refunded to the company's patrons out of the funds deposited in court and under the direction of the court. Any balance remaining thereafter in the funds deposited in court shall be returned to the company. Each party shall pay its own costs on this appeal.

MORRIS, Ch. J., and W. L. NUESSLE, and A. G. BURR, JJ., concur.

CHRISTIANSON, J. (Concurring specially) The Public Utilities Act of this state provides: "The value of the property of a public utility company, as determined by the commissioners, shall be such sum as represents, as nearly as can be ascertained, the money honestly and prudently invested in the property." Laws 1919, chap 192, § 37; § 4609c37, 1925 Supplement. On the former appeal in this case

(71 ND 1, 298 NW 423), I expressed the view that the legislature by this provision intended to prescribe and did prescribe, the measure, i. e.—the basic standard,—of value to be ascertained and employed by the Commission as a rate base. I still adhere to the views I then expressed. The majority of the court, however, ruled otherwise. Accepting, as I must, the decision of the court as promulgated by the majority as the law to be applied in the determination of the questions presented on this appeal, I am constrained to agree with the conclusion reached in the opinion prepared by Judge Burke.