Public Service Commission, } No. 3798.
Feb. 1, 1949.

NEW ENGLAND TELEPHONE AND TELEGRAPH COMPANY

*v.*

THE STATE OF NEW HAMPSHIRE *& a.*

*Sulloway, Piper, Jones, Hollis & Godfrey* and *T. Baxter Milne* of Massachusetts (*Mr. Hollis* orally), for the appellant.

*Wyman, Starr, Booth, Wadleigh & Langdell* (*Mr. Wyman* and *Mr. Langdell* orally), for the appellees.

*Claude H. Swain, amicus curiae,* by brief and orally.

DUNCAN, J.  The fundamental basis for the company's appeal relates to the method of fixing rates adopted by the Commission. It assigns among other grounds for the appeal, the "failure of Commission to make findings as to the fair value of the Company's property devoted to intrastate telephone service . . . or as to the intrastate base . . . ," and the "failure of Commission to make findings as to the rate of return the Company is entitled to earn on a reasonable rate base."

The Commission's investigation of the rates of the appellant company was instituted "to enable the commission to pass upon the reasonableness of the rates and charges" of the company. R. L., c. 287, s. 37. Its statutory duty, both on petition by the utility for the determination of rates, and after hearing upon its own motion, is to determine and establish the "just and reasonable rates" to be thereafter observed by the utility. R. L., c. 287, s. 5; c. 292, s. 7. Under established practice, rates have customarily been fixed by determining a proper rate base upon which the utility should be entitled to a return, a rate of return which it should reasonably be entitled to earn thereon, and the amount of revenue required to produce the resulting return, and hence to be translated into rates.

In *State v. Hampton Water Works Company,* 91 N. H. 278, this court last had occasion to review commission findings as to the fair value of a utility, and there undertook to lay down principles complying with requirements of the Federal Constitution, as established by a long line of decisions of the United States Supreme Court beginning with *Smyth v. Ames,* 169 U. S. 466. No occasion is presented to trace from that decision the rise and fall of the doctrine of "fair value." It has been sufficiently reviewed by recent decisions and articles. See *Utah Power & Light Co. v. Public Service Commission,* 107 Utah 155; Scope of Judicial Review of Rate Regulation, 39 Ill. L. Rev. 160.

With the decision of *Federal Power Commission* v. *Hope Gas Co.*, 320 U. S. 591, and cases since decided by the same court, concepts of the constitutional requirements which produced the "fair value" formula have been abandoned, and the principles which furnished a foundation for much which was said in the *Hampton* case have been discarded. No longer are the provisions of the Constitution considered to require determination of fair value, or consideration of reproduction cost, or disregard of "prudent investment." The court said in the *Hope* case: "We held in *Federal Power Commission* v. *Natural Gas Pipeline Co.*, [315 U. S. 575] that the Commission was not bound to the use of any single formula or combination of formulae in determining rates. . . . And when the Commission's order is challenged in the courts, the question is whether that order 'viewed in its entirety' meets the requirement of the Act. *Id.*, 586. Under the statutory standard of 'just and reasonable' it is the result reached, not the method employed which is controlling." *Federal Power Commission* v. *Hope Gas Co., supra*, 602.

In support of the order of the Commission in this case, the State points to the *Hope* case as authority for the proposition that the Commission is "freed . . . from all formulae," and asserts that the Commission's findings are adequate to permit determination by this court that "the total effect of the rate order cannot be said to be unjust and unreasonable." *Federal Power Commission* v. *Hope Gas Co., supra*, 602. With this contention we cannot agree. So far as the issues before us are controlled by Federal law, it is plain that restrictions formerly imposed by the "fair value" doctrine have been swept away. But if the Commission may be said to be no longer "bound to the use of any single formula," we do not understand that it is thereby relieved from the duty to disclose the "method employed" to reach the prescribed rates, so that the validity of its conclusions may be tested upon judicial review. It may be noted that in the *Hope* case, as in subsequent decisions called to our attention, the findings of the regulatory body whose orders were sustained disclosed a rational process by which a rate base and a rate of return were determined and applied, to produce the return translated into rates (*Colorado Interstate Co.* v. *Comm'n*, 324 U. S. 581; *Panhandle Co.* v. *Power Comm'n*, 324 U. S. 635, 648), or in default thereof, the case was remanded for further findings. *Colorado-Wyoming Co.* v. *Power Comm'n*, 324 U. S. 626.

In determining the validity of the order before us, primary consideration must be given to the requirements of our own statutes.

We do not consider that the statutory requirement that rates shall be "just and reasonable" was an enactment into law of the fair value doctrine of *Smyth* v. *Ames*. As the court said in *Utah Power & Light Co.* v. *Public Service Commission, supra,* 190, 191: "It must be assumed that the legislature contemplated that the concept of that which is 'just and reasonable' might change with social trends. . . . The term . . . is not an absolute. The legislature need not amend the statute to permit the Commission to apply the present judicial interpretation of what is 'just and reasonable.' " The Commission in that case pre-scribed rates determined upon a prudent investment base. In *Commonwealth Telephone Co.* v. *Public Service Commission,* 252 Wis. 481, however, the Commission, in mistaken reliance upon the *Hope* case, undertook to fix rates without determining a base. Holding this to be arbitrary and unlawful, the court directed that specific findings be made of essential facts which would determine a rate base.

Some indication of the manner in which the Legislature intended rates to be fixed is found in the portion of the provisions of statute relating to temporary rates here quoted: "Such temporary rates shall be sufficient to yield not less than a reasonable return on the cost of the property of the utility used and useful in the public service less accrued depreciation. . . . " R. L., c. 292, s. 28. We do not say that the method so described necessarily extends to the fixing of perma-nent rates; but at least it serves to illustrate the legislative view that rates should be determined with reference to the investment upon which they are to provide a return. In this case, a definite finding by the Commission of the base upon which the company is entitled to a return is required by New Hampshire law.

The report of the Commission contains findings both as to net in-vestment and a rate of return thereon which "would be considered reasonable . . . if [the Commission] were to be concerned solely with the viewpoint of the Company" and that of its investors. It suggests that total expenditures indicate "more than a mere possibility of wastefulness in construction and reconstruction," and fixes a smaller return, apparently prompted in part by consideration that the com-pany's "reasonable needs for expansion and the acquisition of new capital" are less than the company contends. The rates so fixed with-out disclosure of base or rate of return, the Commission finds will "with proper economies in management," be just and reasonable both to the company and the public. By what method, by the disallow-ance of what expense or items of investment, or according to what standard the return found otherwise reasonable is reduced, is not dis-

closed. To quote the company's brief, "what return on what is never stated." The kind of vague suspicion of wastefulness suggested by the report will not do as a justification for denying the company the relief sought, although apparently regarded as sufficient by the Commission.

In our opinion, the relief furnished by the *Hope* case from the constitutional restrictions of a formula, do not operate to relieve the Commission of the duty to make findings of facts essential to permit review of its conclusions. This is fairly apparent from the statements of the court in *Colorado-Wyoming Co.* v. *Power Comm'n, supra,* 634, decided since the *Hope* case: "The review which Congress has provided for these rate orders is limited. Sec. 19 (b) says that the 'finding of the Commission as to the facts, if supported by substantial evidence, shall be conclusive.' But we must first know what the 'finding' is before we can give it that conclusive weight. We have repeatedly emphasized the need for clarity and completeness in the basic or essential findings on which administrative orders rest." See also, *Commonwealth Tel. Co.* v. *Public Service Commission, supra; Mississippi River Fuel Corp.* v. *Federal Power Comm'n,* 163 F. (2d) 433; *Monroe Gaslight & Fuel Co.* v. *Michigan,* 292 Fed. 139. By a parity of reasoning, before this court can deem "findings of the commission upon all questions of fact properly before it . . . to be *prima facie* lawful and reasonable" (R. L., c. 414, s. 13), the findings must be disclosed. Nor can the validity of Commission orders be determined, unless the findings upon which they rest can be measured against the evidence from which they are made. "The discretion and judgment confided in the Commission must be exercised upon facts and reason. The duty of review imposed upon the courts requires that facts be found and the reasons stated. Otherwise, the courts cannot determine whether a given action is or is not arbitrary." *Mississippi River Fuel Corp.* v. *F. P. C., supra,* 439. We see no reason for departure from the principles established by our cases, that the commission is under a duty "to find all facts . . . essential to the presentation of all questions of law raised by . . . [their] order." *Grafton &c. Co.* v. *State,* 77 N. H. 490, 498.

It is argued on behalf of the State that the Commission has "endeavored in this case to make a complete disclosure of the factual background upon which its decision rested," and that having found unduly burdensome to consumers a return derived from specified components and described as reasonable from the standpoint of the company, the Commission has properly fixed a lesser return. We

recognize that "the public cannot properly be subjected to unreasonable rates in order simply that stockholders may earn dividends" (*Covington &c. Turnpike Co.* v. *Sandford,* 164 U. S. 578, 596), and that "regulation does not insure that the business shall produce net revenues." *Federal Power Comm'n* v. *Hope Gas Co., supra,* 603. We think it equally plain that rates may not be held unreasonable without reference to evidence from which their unreasonableness is considered to appear. If, as the report of the Commission implies, construction undertaken by the company is "wasteful," or its expense is unwarranted by the demand probable at the necessary price for service produced by it, or if "proper economies in management are lacking" so that operating expenditures are shown to be excessive or overestimated, unwarranted investments may be excluded from rate base, and unjustified expenditures from the determination of a reasonable return. Such exclusions call for findings, the accuracy of which may be reviewed. The primary responsibility for the making of such findings rests with the Commission. Because of its specialized assistance, and its consistent experience in regulation, its findings are accorded a legislative presumption of reasonableness. R. L., c. 414, s. 13, *supra.*

It is not for the court to search voluminous records for evidence which might be thought to support findings which are undisclosed. "Primarily it has the duty of determining the validity upon the evidence of the commission's findings of the evidentiary facts upon which the justice and reasonableness of the order appealed from may depend." *Parker-Young Co.* v. *State,* 83 N. H. 551, 559. Since essential findings have not been made, we are unable to determine whether the order is or is not "reasonable and lawful." Accordingly the case must be remanded for such findings. *Parker-Young Co.* v. *State, supra; Grafton &c. Co.* v. *State, supra,* 498.

The record appears to afford no basis for determination of a proper return by any process other than the usual rate base method. The Commission undertook to find the company's net book cost investment as of December 31, 1947. There is no dispute that in doing so, it inadvertently made use of a net average figure for the year. With the error corrected, the finding intended by the Commission should have been $15,627,882. To what extent if any the error affected the final rate determination made by the Commission cannot be determined from this record. While the Commission is free to use average investment figures, they are to be distinguished from year-end figures. The result reached by the Commission indicates little reliance upon

"current cost" figures. Since they were entitled only to such weight as the Commission saw fit to give them, no error of law can be predicated upon their rejection.

There appears to be no reason why the Commission in formulating its findings upon remand, should depart from the procedure originally contemplated, that of determining a rate base for 1947, and bringing it forward through 1948. Since actual figures for 1948 may now be substituted for estimates, this can be done with greater certainty than has heretofore been possible. In so far as disputed issues arising out of the determination of net investment are likely to recur upon remand, they are considered elsewhere in this opinion.

The question of fixing a rate of return to be applied to the rate base is peculiarly within the discretion of the Commission. Whether it should rely upon the expert testimony presented by the State in preference to that offered by the company cannot be decided as a matter of law. The proper rate of return is a matter for the judgment of the Commission, based upon the evidence before it. In fixing the rate the cost of capital may not be ignored; but what that cost may be is also a matter for determination by the Commission upon the evidence. To the extent that it represents an opinion, the evidentiary basis for it should appear. Once determined, it marks the minimum rate of return to which the company is lawfully entitled. Whether more shall be allowed depends upon the Commission's determination of what is a "just and reasonable" return.

The "end result" is to be reached by a "balancing of the investor and the consumer interests." *Federal Power Comm'n* v. *Hope Gas Co.*, 320 U. S. 591, 603. From the investor point of view this requires that there be enough revenue for the capital costs of the business including service on the debt and dividends on the stock: a return "commensurate with returns on investments in other enterprises having corresponding risks," and "sufficient to assure confidence in the financial integrity of the enterprise, so as to maintain its credit and attract capital." *Colorado Interstate Co.* v. *Comm'n, supra,* 324 U. S. 581, 605; *Power Comm'n* v. *Hope Gas Co., supra,* 603. As the Commission has recognized, a return fair to investors is not necessarily fair to consumers. *Federal Power Comm'n* v. *Pipeline Co.,* 315 U. S. 575, 608. The "measure of a prudent outlay" may be determined by the Commission in fixing the base upon which the investor is entitled to a return, if the evidence is found to disclose inefficiency or improvidence. See *West Ohio Gas Co.* v. *Comm'n,* (No. 1) 294 U. S. 63, 72. While the good faith of management has not been seriously

questioned, a finding of improvidence is not for that reason foreclosed, and might on proper evidence be taken to warrant denial of return upon investment found to be imprudent.

The company has protested vigorously the use made by the Commission of evidence relating to rates in effect, or sought by the company, in other jurisdictions. Its motion that the evidential effect of these rates be limited to the question of "fairness and reasonableness of basic monthly rates in New Hampshire *inter se*" was denied. Consideration of the evidence is assigned as a ground of the appeal.

The Commission is not bound by technical rules of evidence (R. L., c. 287, s. 10), and the evidence was properly received without the requested limitation. It was offered primarily for the purpose of casting doubt upon the reasonableness of the proposed New Hampshire rates, and the "credibility of the case presented in New Hampshire." Because of the liberal rule regarding the admissibility of evidence before the Commission, however, it is important that only proper use shall be made of it. See *Interstate Commerce Comm.* v. *Louis. & Nash. R. R.*, 227 U. S. 88, 93. Although the evidence was frequently referred to in the Commission's report, no impropriety of use is evident. The Commission found that the company's action with respect to rate schedules elsewhere recognized that the interests of subscribers "require a lower rate of return" than those to which the witnesses testified in these proceedings. It pointed out that the rates sought would subject New Hampshire subscribers to higher charges than those proposed for comparable service in the Massachusetts portion of the same company district. It found no proof of a difference in the value of the services, and stated that it was not satisfied that there was any reasonable basis why New Hampshire service should cost more. It noted that New Hampshire-filed rates are higher than those filed in any other state for a similar service.

The significance of some of these observations is somewhat dulled by the company's assertion that it now seeks rates to yield a comparable return in the other states in question. However the evidence did not for this reason become incompetent. While the jurisdiction of the Commission is confined to New Hampshire intrastate rates, it is not required to fix them in a vacuum, or to close its eyes to the company's conduct of its affairs in neighboring states where comparable conditions are to be anticipated. This is not to say that rates in New Hampshire may be fixed according to a standard of rates effective elsewhere. New Hampshire rates must reflect the proper and reasonable costs of business here. But a comparison of rates which

reveals a differential not reasonably to be expected under conditions commonly regarded as comparable may be thought to make suspect the reasonableness of the various components relied upon to sustain the higher rates. No exposition of factors which might account for the apparent differential was undertaken by the company. It contented itself with its counsel's description of pending rate applications in the states in question. In this situation, the evidence was pertinent in considering whether the company had sustained its burden of establishing the reasonableness of the rates requested in New Hampshire.

Of itself, the evidence relating to rates elsewhere has no conclusive probative force. Its affirmative effect depends upon other evidence to which it may lead. Thus if the sudden and high cost increase in New Hampshire investment and operating expense is related to the circumstance that New Hampshire is "at the bottom of the . . . list in the matter of utilization of modern telephone equipment and apparatus," and shown to result from injudicious or discriminatory management, the company may not expect the consumer to be required to pay a return thereon. If accrued depreciation fails to take into account the obsolescence of antiquated equipment, its proper value for purposes of rate making may be determined. If new construction should have been undertaken upon a smaller scale or was unjustifiably postponed to an unpropitious time, a return based upon present construction cost is not required. Purchases made of affiliates at higher than normal or reasonable profit margins need not be accepted as a measure of allowable expense. See *United Gas Co.* v. *Texas*, 303 U. S. 123, 150, 151. In brief, costs inflated by improper charges or injudicious expenditures are not conclusive (see *San Diego Land & Town Co.* v. *Jasper*, 189 U. S. 439, 442) and mere actuality of expense does not establish its "reasonableness . . . propriety or necessity." *Stanilaus County* v. *San Joaquin C. & I. Co.*, 192 U. S. 201, 214. As was said in *Mississippi River Fuel Corp.* v. *F. P. C.*, 163 F. (2d) 433, 451. "The 'end result' is the ability of the rate to meet the sum of the costs required to conduct the operation in fairness to the consumer and the company."

It should be borne in mind that disallowances in investment base or expense of operation may not be arbitrarily made. Not only must their extent be fixed by findings, but the reason for disallowance must appear. In other words, they require disclosure of some rational process by which the consequences of any established impropriety are determined.

The briefs of *amicus curiae* focus attention upon the question of whether the proposed rates, and in particular the monthly base rates established according to exchange groupings, would produce an equitable distribution of the increased revenue burden among the rate payers. Rates are required to be just and reasonable *inter se*, as well as *in toto*. Discrimination may be made the basis of complaint by municipalities (R. L., *c.* 287, *s.* 5), and preferences are forbidden (R. L., *c.* 292, *s.* 11). The company recognizes that an important step in rate making is "the adjustment of a rate schedule conforming to [the general revenue] level so as to eliminate discriminations and unfairness from its details." *Power Comm'n* v. *Pipeline Co.*, 315 U. S. 575, 584. In view of what was said by the Commission in its former report (*New England Telephone & Telegraph Co.*, 29 N. H. P. S. C. 163, 187, 188, 190) the issue has presumably received consideration. Whether it should be considered further in the light of the argument made before us is for the Commission to decide, having in mind that continued use of the service furnished by the company will be encouraged only if increases are equitably distributed among consumers.

The appellant has assigned as a ground of the appeal the action of the Commission in excluding from evidence a comparison between estimates made by the witness Hill in proceedings relating to rates of the New Jersey Bell Telephone Company, and actual results of subsequent operations as disclosed by the annual report of that company. The offer was made on the question of the credibility and weight of the witness' testimony, and excluded as remote. The probability of injection of collateral issues was apparent, and no error is perceived in the exclusion of the evidence. *Gerry* v. *Neugebauer*, 83 N. H. 23, 26; *Amoskeag Co.* v. *Head*, 59 N. H. 332, 337, 338.

*Net Book Investment.* In arriving at a figure for net intrastate investment as of December 31, 1947, the Commission excluded from consideration items of telephone plant under construction, amounting to $488,534, and property held for future telephone use, totalling $10,493, "because of the fact that they represent investment not yet used or useful in the public service." With this exclusion the company takes issue. The items were excluded from consideration by the State's expert witness for similar reasons, and because the effect upon return would be offset by increases in earnings when the plant should be placed in service. The company attacks his reasoning by reference to the testimony of its vice-president that new construction would furnish no commensurate increase because designed primarily to

effect improvements in existing service. The issue presented is essentially one of fact for the Commission's determination. The same company official testified that "a great deal of the gross new construction" for the years 1946-1948 "is in addition to and not replacing former plant, and is adding to the total useable facilities in the state." There was evidence of substantial demand for better grades of service which when satisfied would produce increased revenue, off-setting the loss of return resulting from exclusion of construction from the rate base. It also appeared that interest upon unfinished construction is capitalized by the company. In this situation, by almost universal rule, exclusion from the base is held proper to prevent a double return. See *Northern States Power Co.* v. *Public Service Com.*, 73 N. D. 211, 230; *Ohio Bell Telephone Co.* v. *Public Utilities Com.*, 131 Oh. St. 539, 582; *Public Service Com.* v. *Mountain Fuel Supply Co.*, (Utah), 73 P. U. R. (N. S.) 428, 436; *Detroit* v. *Panhandle Eastern Pipeline Co.*, (*F. P. C.*), 45 P. U. R. (N. S.) 203, 214; *Re Commonwealth Telephone Co.*, (Wis.) 41 P. U. R. (N. S.) 78, 86. The Commission was at liberty to determine the effect which should be given to the items in question in fixing rates for a period of two years without giving conclusive weight to views advanced by the company.

Related to these items is the Commission's suggestion that the magnitude of expenditure indicates "wastefulness in construction," and that the unprecedented program may exceed "reasonable needs" for expansion. These comments, and the query whether "the additional intrastate business demands the large increases in capital investment" can hardly be accorded the status of "essential findings" supporting the order made. *Grafton &c. Co.* v. *State, supra.* If they play a part in the conclusions of the Commission, specific findings should be made to indicate their use; and the Commission is entitled in dealing with these as well as other matters to take into account the burden resting upon the company to justify its figures. In its earlier report, made in granting temporary rates in 1947, the Commission emphasized the low percentage of dial telephone in New Hampshire, and the resulting "wage penalty." 29 N. H. P. S. C., 163, 184. As previously noted, the report now before us states that "New Hampshire appears to be at the bottom . . . in the matter of . . . modern telephone equipment and apparatus." Although considerable testimony bearing upon this feature of the case was received in the course of the rate hearings, no finding indicates its effect upon the result reached. If it is considered by the Commission to have a bearing upon the propriety of charging consumers with a return upon con-

struction at current costs, or with current costs of operations, findings are essential to permit review of the use made of such evidence.

In the usual case, absent considerations of double return, whether investments not presently used or useful in the public service shall be included in the base depends upon whether they are to be placed in such service within the period for which the rates are fixed. "There will be no need in the computation of the rate base to include the . . . value of [assets] not presently in use, unless the time for using them is so near that they may be said, at least by analogy, to have the quality of working capital. . . . Postponement of . . . profit until the stage of imminent or present use is not an act of confiscation, but a legitimate exercise of legislative judgment." *Columbus Gas Co.* v. *Comm'n*, 292 U. S. 398, 406, 407.

*The Effective Period of Two Years.* For such bearing as it may have upon the last considered issue, notice may be taken of the company's objection to the provision of the order making the rates effective for two years. It is asserted that the provision operates to "freeze" the rates without provision for modification which might otherwise be open in case of future unfavorable changes in economic conditions. The pertinent statute provides that "the rates . . . fixed and allowed by the commission . . . shall be the rates . . . to be charged . . . for such period of time, not exceeding two years, as shall be prescribed in the order . . . " R. L., c. 287, s. 24. The Commission is not required to investigate rate matters more frequently than once in five years (R. L., c. 287, s. 5), but may do so in its discretion. We perceive no abuse of discretion in fixing two years as the effective period of the rate order, particularly since consideration was given in this case to forseeable conditions during a longer period.

*Estimated investment and operating figures for 1948.* While the report of the Commission compares the estimated average net investment figures for 1948 presented by the company and the State, no reported finding with respect thereto was made by the Commission. Upon remand, consideration should be given to the actual figures and appropriate findings made, so far as the company establishes that they are entitled to consideration in the determination of a fair return.

Findings were made by the Commission as to estimated revenues and expenses for 1948, in determining the estimated loss of $616,200 from intrastate operations for the year. The estimate of revenues, not substantially different from that of the company, is not seriously questioned. Objection is voiced, however, to adoption by the Commission of testimony of the witness Hill which excluded from operat-

ing expense substantial items of estimated depreciation and maintenance claimed by the company.

*Depreciation.* The figures adopted by the Commission in estimating depreciation for 1948 were $121,000 less than those advanced by the company. The company's brief concedes that the methods used by the witnesses who testified on the subject were the same, and that the difference in results reached "arises in the application of judgment to the known data." The argument presents no question of law; nor are we satisfied that the presumption of the reasonableness of the Commission's finding is overcome by evidence to the contrary. No disposition was shown to question the amount of the accumulated reserve for prior years. It does not follow that in estimating depreciation for the immediate future the company's estimates must be given the same recognition. The high proportion of depreciation and maintenance expense to total operating expense may be thought indicative of "provision for capital additions, over and above the amount required to cover capital consumption." *Lindheimer* v. *Illinois Tel. Co.*, 292 U. S. 151, 174.

*Maintenance.* Much the same answer might be made to the objection to adoption of an estimated maintenance expense figure which was $141,000 less than that of the company. Since these expenses have now become actual, the items involved should be reconsidered from the standpoint of propriety of allowance, and the objection becomes moot.

Attention is called by *amicus curiae* to the possibility that charges to maintenance, and in particular items classified as "rearrangements and changes" result in large part from new construction and do not represent recurring costs of operation. While the company asserts that "it by no means follows that the expense item will disappear or be materially reduced by completion of construction," the issue is not thus easily resolved. See *Public Utilities Commission* v. *New England Telephone & Telegraph Co.*, (Me. P. U. C.) *F. C. No. 1275* (July 20, 1948); *Re Wisconsin Telephone Company*, 13 P. U. R. (N. S.) 224, 240. Whether it should be further explored is for the Commission to determine. Certainly it may be considered in determining probable future operating expenses.

*Other operating expense.* In the estimates of operating expenses for 1948, neither the State's witnesses nor the Commission made allowance for the expenses of the rate case. This was clearly error. The statute expressly provides that such expenses shall be charged to operating expenses, and "amortized over such period as the commis-

368

sion may deem proper." R. L., c. 287, s. 37. While the company has proposed three years as a suitable period, it was suggested in the *Hampton* case that "in the lack of substantial evidence that another investigation will transpire within the quinquennial period, it should be employed as the only reasonable one to take for the amortization." *State* v. *Company*, 91 N. H. 278, 297. The period of amortization should be fixed by the Commission in the light of the consideration advanced by that decision.

Whether federal income taxes should be allowed as an operating expense is a matter in issue between the parties. The Commission estimated that the rates which it established would provide $681,360 "after Federal Income Taxes." Since there was in fact no tax upon income for combined New Hampshire operations for the year 1947 because operations showed a loss, reference to that year would furnish no justification for omission of the expense in estimating for 1948. Certain of the testimony appears to suggest that because of allowable deductions against combined income, the actual tax would be less than one computed upon intrastate income alone. Obviously no more than the estimated actual tax need be taken into account. An expense not in fact to be incurred may not be used to demonstrate an expected loss. On the other hand the State's argument that the tax should not be considered finds no support in the authorities. The proportion of the actual tax properly attributable to intrastate operations should be classified as an allowable expense of operation.

For reasons hereinbefore indicated, the order is

*Remanded.*

All concurred.