## CITIZENS TEL. CO. v. PUBLIC SERVICE COMMISSION OF KENTUCKY.

Court of Appeals of Kentucky.

March 28, 1952.

Rehearing Denied June 20, 1952.

Frost & Jacobs, Cincinnati, Ohio, Blakely, Moore & Blakely, Covington, Doolan, Helm, Stites & Wood, Louisville, for appellant.

A. E. Funk, Atty. Gen., J. Gardner Ashcraft, Asst. Atty. Gen., for appellee.

CULLEN, Commissioner.

The Citizens Telephone Company filed with the Public Service Commission a schedule of new rates, designed to produce an annual increase in gross revenues. After hearings, the commission granted a portion of the increase, and denied the balance. The company brought action under KRS 278.410, seeking to have the order of the commission set aside on the ground that it was unlawful and unreasonable. The circuit court upheld the order, and the company has appealed. Thus we have before us the question of whether the order was unlawful or unreasonable, which we understand relates to the effect or results of the order rather than the theories upon which the order was predicated.

The primary contention of the telephone company, on this appeal, is that the Public Service Commission, in fixing the rate base, did not give "due consideration" to cost of reproduction as a going concern, as required by KRS 278.290, and as a result the commission fixed the rate base too low. The company in its brief, and the Union Light, Heat and Power Company in a brief amicus curiae, invite us to enter into a detailed examination of the theory of rate-base fixing, particularly with respect to the consideration and weight to be given reproduction cost new. This we decline to do, because the practicalities of this case do not require it.

It must be remembered that in this case the telephone company was seeking approval of a specific schedule of new rates, designed to produce additional income estimated at a specific amount. The only question before the Public Service Commission, as far as rate base is concerned,

was whether the company could show a rate base which, related to a reasonable rate of return, would support the proposed rates.

The company's proposed rate schedule would have increased the annual gross revenues of the company by an estimated $464,229. The Public Service Commission granted a rate increase sufficient to produce additional annual revenues of $377,708, thus denying to the company $86,521 of the amount requested.

The commission fixed the rate base, as related to net operating income, at $7,000,000, basing its determination primarily on original cost less depreciation. The commission found that a rate of return of 6 percent on this rate base would be reasonable. The company has maintained throughout the case that it is entitled to a rate of return of 7.2 percent. The difference between a return of 7.2 percent and a return of 6 percent, on the determined rate base, would be $84,000, which is substantially equal to the portion of the requested rate increase that the commission refused to grant. This indicates that there is no basis for a controversy in this Court as to the amount of rate base, because the rate base found by the commission would justify the rates requested by the company if the company was able to establish its right to a return of 7.2 percent. The actual controversy is as to the rate of return, and not the rate base.

Of course it will be argued that a higher rate base, with a 6 percent rate of return, would have supported the full increase in rates sought by the company, and therefore the rate base *is* in controversy. The fallacy in that argument is that it assumes the rate of return should remain the same regardless of the method or formula used in determining the rate base. Actually, the policy in other jurisdictions, in telephone rate cases in recent years, has been to fix a lower rate of return where the rate base is determined according to reproduction cost new, than where it is determined according to original cost less depreciation. Rose, "The Bell Telephone System Rate Cases," 37 Virginia Law Review, page 699. This policy does not necessarily reflect an effort to minimize the effect to be given reproduction cost new, but rather it is based upon a recognition that a rate base determined on reproduction cost new, and a rate base determined on original cost less depreciation, call for the use of different standards of measuring the reasonableness of a rate of return.

If reproduction cost new is used as the rate base, then it seems that the rate of return should be "equal to that generally being made at the same time and in the same general part of the country on investments in other business undertakings which are attended by corresponding risks and uncertainties". Bluefield Waterworks and Improvement Company v. Public Service Commission, 262 U.S. 679, 43 S.Ct. 675, 679, 67 L.Ed. 1176. In applying this standard, the capital structure of the company, and its actual needs in the way of preserving its financial integrity and attracting capital, are not taken into consideration, because the question is one only of a fair percentage of return on the value of an investment, without regard to the actual financial experience or needs of the company. Having in mind that a telephone company is a monopoly, with little risks as compared to competitive business enterprises, it would be difficult for a court to say that a rate of return equal only to the prevailing rate of interest on sound business investments would be confiscatory or unreasonable, where the rate of return is based on reproduction cost new.

As said by the Supreme Court in the Hope case (Federal Power Commission v. Hope Natural Gas Co., 320 U.S. 591, 64 S.Ct. 281, 88 L.Ed. 333), rates which enable the utility to operate successfully, to maintain its financial integrity, to attract capital, and to compensate its investors for the risks assumed, cannot be condemned as invalid, even though they might produce only a meagre return on the so-called "fair value" rate base. Obviously, in times of inflated values, such as the present, a low rate of return based on reproduction cost new will adequately supply the financial needs of the utility.

■ Where original cost less depreciation has been used as the rate base, public regulatory bodies generally have employed the "cost of capital" test for determining what will constitute a reasonable rate of return. Rose, "The Bell Telephone System Rate Cases," 37 Virginia Law Review, page 699. This is because the rate base is determined with relation to capital structure, and it is therefore proper to relate the rate of return also to capital structure. However, there is no reason to use the "cost of capital" test or standard in fixing a reasonable rate of return, where the rate base is reproduction cost new, because the rate base in that case is fixed without regard to capital structure. Certainly, the utility should not be entitled, in times of high prices, to claim a "fair value" rate base, and then seek to have applied to that rate base as standard of measuring reasonableness of rate of return that is based on the philosophy of an original cost rate base. .

■ In the case before us, the company introduced evidence designed to establish a value, on the basis of reproduction cost new, of $12,771,000. It will be apparent that a 4 percent rate of return on this value would produce substantially the same revenues as a 7.2 percent return on the rate base of $7,000,000 fixed by the commission. A 7.2 percent rate of return on reproduction cost new would produce twice as much money as the company was asking for. This illustrates that the standard used in measuring the reasonableness of the rate of return must vary in accordance with the method or formula employed in fixing the rate base, and it brings us back again to the proposition that this case involves either a controversy as to rate base, or as to rate of return, but not both. As the case was developed, the controversy may be limited to the question of rate of return.

The company complains particularly of language used in the commission's order, to the effect that "cost of reproduction as a going concern is too conjectural to have probative value" for rate base purposes. If the commission intended this language to constitute an expression of policy that in no case will cost of reproduction be considered, the company's criticism of the language is justified. However, as we have indicated, it is clear that in this case there was no necessity for the commission to consider cost of reproduction, and what the policy should be as to the consideration and weight to be given cost of reproduction is a question that we are not called upon to answer in this case.

The rate base fixed by the Public Service Commission is further attacked by the telephone company on the grounds that the commission refused to include an amount for working capital, or the value of plant under construction. Since, as we have pointed out above, the real controversy revolves around the rate of return to be allowed, and not the rate base, it very well might be said that the items of working capital and plant under construction have no significance in this particular case. However, in any event the action taken by the commission concerning these two items seems to be justified.

■ Actually, although the commission stated that it would not allow the working capital item of $140,000 carried on the books of the company, the rate base of $7,000,000 fixed by the commission was some $360,000 in excess of the book cost of the company's plant as adjusted by the commission. This "cushion" of $360,000 in the rate base more than offsets the disallowed working capital item. In addition, the commission found that the company bills its customers in advance, and that the company accrues its taxes on a monthly basis. The tax accruals themselves would provide sufficient cash for working capital requirements. The investors have not contributed any money for working capital purposes. Under these circumstances, the commission did not act unreasonably or unlawfully in disallowing the working capital item.

■ Concerning the matter of plant under construction, it appears that the company, in accordance with the Uniform System of Accounts for telephone companies, has capitalized interest on the cost of plant under construction. The company

concedes that ordinarily, if interest is so capitalized, the plant under construction should not be included in the rate base, because otherwise a double return will be realized. However, the company contends that a double return is avoided because it credits interest back as net income, thus reducing its earnings requirements. If the company was crediting interest back as *operating income,* thus reducing *net operating income* requirements, there would be some justification for its position. However, the record shows that the company credits interest back as income other than operating income, which does not have the effect of reducing the net operating income requirements. It is net operating income that is related to the rate base in determining what will constitute a reasonable rate of return. We think that the commission properly refused to include plant under construction in the rate base. See Rose, "The Bell Telephone System Rate Cases," 37 Virginia Law Review, page 699; New England Tel. & Tel. Co. v. New Hampshire, 95 N.H. 353, 64 A.2d 9.

With respect to the rate of return, the evidence for the company was that a fair and reasonable rate of return would be 7.2 or 7.3 percent. The evidence consisted of the testimony of two expert witnesses, based upon the money market, the financial history of the company, its credit basis, the investment risk involved, and similar factors. One of the witnesses estimated that the risk for equity capital in Ohio would be 6.254 percent, but that the risk for similar capital in Kentucky would be 20 percent higher. The Public Service Commission took into consideration the fact that the stock of the telephone company is owned by the Cincinnati and Suburban Bell Telephone Company, a parent corporation which is located in Ohio, and the commission therefore rejected the estimate of higher equity capital risks for Kentucky. The commission further relied upon common knowledge of the cheap money market prevailing generally at the present time.

The principal argument for the company, as to the rate of return, is that the commission was required to accept the testimony of the company's witnesses, there being no other evidence in the record upon which the commission could base a decision. We do not think that the Public Service Commission, as a regulatory body having broad statutory powers in passing upon the reasonableness of rates of public utilities, is bound to accept the opinion evidence of witnesses as to what constitutes a fair and reasonable rate of return. We believe that the commission was entitled to take notice of the prevailing money market, business conditions generally, and the standards as to rate of return existing with relation to utilities throughout the country. In addition, the commission had before it the records as to the financial history of the company, which furnished strong evidence of its actual requirements by way of a rate of return. And in the final analysis, what constitutes a reasonable rate of return is influenced to a great extent by the capital structure of the company.

We make reference again to the fact that the company asked for an increase of $464,000 in gross revenues. If the commission had fixed the rate base according to reproduction cost new, and allowed a rate of return of 7.2 percent, the additional revenues would have amounted to more than $1,000,000. Certainly the commission was entitled to make its decision on the basis of the specific relief sought by the company, rather than on abstract theory of utility law.

The judgment is affirmed.