COMMONWEALTH of Kentucky ex rel. Ed W. HANCOCK, Attorney General, Appellant,

v.

SOUTH CENTRAL BELL TELEPHONE COMPANY and Public Service Commission of Kentucky, Appellees.

Court of Appeals of Kentucky.

May 23, 1975.

Rehearing Denied Oct. 3, 1975.

Ed W. Hancock, Atty. Gen., Laura L. Murrell, Asst. Atty. Gen., Frankfort, for appellant.

Lively M. Wilson, Stites, McElwain & Fowler, William S. Connolly, Louisville, Wiltshire M. Booker, Jr., Gen. Sol., and Norman C. Frost, Vice President and Gen. Counsel, South Central Bell Telephone Co., Birmingham, Ala., for appellees.

CULLEN, Commissioner.

South Central Bell Telephone Company (Bell) made application to the Kentucky Public Service Commission (PSC) for an increase in rates that would produce additional annual gross revenues of approximately $25.7 million. Protests were made, extensive hearings were conducted, and PSC eventually entered an order granting only a partial increase in rates, that would produce additional annual gross revenues of $15.1 million. The Commonwealth of Kentucky, on relation of the Attorney General (represented by his Consumer Protection Division), appealed to the circuit court. Judgment was entered by that court upholding the PSC order. The Attorney General has appealed to this court from that judgment.

■ On the appeal to the circuit court the Attorney General, in addition to attacking the rate-increase order, asked the circuit court for a mandatory order directing PSC *in the future,* for the purpose of *future regulatory* purposes, to require Bell, in the monthly reports it files with PSC, to show a breakdown of the revenues, expenses and investment data allocable to Kentucky intrastate operations (over which alone PSC has jurisdiction), instead of showing revenues, expenses and investment data on a system-wide basis, which requires the application of a separations manual in order to determine what is subject to PSC regulatory control. The circuit court judgment denied the requested relief and that denial is the first ground of error asserted by the Attorney General.

The case presented to the circuit court on the merits of the rate-increase order was a complicated, difficult, exhausting one, requiring full undivided attention of the court. It is the opinion of this court that the circuit court was entitled to reject, as inappropriate and untimely for consideration, the matter of a detail of future regulatory action. This court finds no error in this regard. We do not consider the denial of the relief in this circumstance as a

bar to the seeking of it in another, more appropriate proceeding.

■ The Attorney General asserts a claim of denial of procedural due process in connection with the allowance by PSC of a wage adjustment, to the test-year operating expenses, of $2.2 million per year, resulting from a wage agreement that became effective in the latter part of the test year. The Attorney General maintains that this adjustment was never proposed until briefs were filed after the completion of all the evidence in the PSC hearings, and that the facts on which the adjustment was based were not brought out until the rebuttal stage of Bell's case, wherefore the Attorney General was denied the opportunity to prepare and present opposition to the adjustment, by way of cross-examination, presentation of contrary evidence, argument, etc.

The Attorney General concedes, however, that the $2.2 million figure "is probably an accurate reflection of the dollar increase in wages"; in other words, as an *expense* item the amount is proper. The harm claimed to have been suffered, from the alleged denial of procedural due process, arises from the loss of the opportunity to show that there may have been *revenue growths* or *productivity increases* that would offset the wage increase, so that there would be no need for a rate increase in the amount of the wage increase.

We may concede for the purposes of argument that there was a violation of proper procedure in the handling of the wage-adjustment matter. We are not persuaded, however, that any *prejudice* resulted therefrom. Throughout the PSC hearings, the interest of Bell was to show increased operating expenses, while the interest of the Attorney General was to show that anticipated revenues under existing rates would be adequate to meet expenses and to pay a fair return on investment. The fact that Bell asserted a new claim of expenses late in the hearings would not be calculated to have prejudiced the Attorney General's presentation of additional amounts of reve-

nue, unless the activity causing the additional expenses was such as to *generate* additional revenue. The Attorney General does not suggest in what way the payment of higher wages to the same number of workmen might be productive of more revenue. We think it is reasonable to believe that the Attorney General in the regular course of the hearings brought out every potential source of revenue increase that he could find, and we are not convinced that had he been given the procedural rights that were denied to him he could have found any more. Thus we find no prejudicial error in this phase of the case.

■ On the merits of the rate increase, the Attorney General makes two arguments, one addressed to the selection of the debt-equity ratio that was used by PSC in determining what *rate of return* would reasonably be required on the cost-of-capital basis, see Federal Power Commission v. Hope Natural Gas Co., 320 U.S. 591, 64 S. Ct. 281, 88 L.Ed. 33; and the other addressed to the *rate base* to which the rate of return was applied by PSC in determining the amount of gross revenue that would be produced.

Since Bell is a wholly-owned subsidiary of A.T. & T., which means that A.T. & T. is the one that goes to the public to raise capital, PSC resorted to A.T. & T.'s capital structure as a guide to determine a reasonable debt-equity ratio for Bell. A.T. & T.'s actual debt-equity ratio was:

| | |
|---|---|
| Debt | 46.6% |
| Preferred stock | 2.7% |
| Common equity | 50.7% |

Instead of using that exact ratio, PSC lumped the preferred stock in with the common and rounded the total upward a few percentage points to take into account future stock issues, and ended up with the following ratio for Bell:

| | |
|---|---|
| Debt | 45% |
| Equity | 55% |

PSC found that the cost of debt was 6.12% and the cost of equity capital was 10.9%,

making a net rate of return, using the 45–55 debt-equity ratio, of 8.75%. Obviously, since the cost of equity capital is much higher than the cost of debt, the higher the equity factor is in the debt-equity ratio, the higher the rate of return must be.

The Attorney General argues that PSC should have used the exact A.T. & T. debt-equity ratio (with a cost of 8.00% for preferred stock), which would have reduced the equity factor to 50.7% and would have reduced the rate of return to 8.60%. The lower rate of return would produce some $400,000 less in net revenues.

Even if it be accepted that proper accounting practices and theory would dictate the selection of the 8.60% rate of return rather than the 8.75% rate, it would not follow as a matter of course that the choice of the latter rate made the PSC order unlawful or unreasonable, when it is considered that not only is the rate of return itself a matter of what is *fair* rather than one of mathematical precision, but the debt-equity ratio used for Bell was and could be no more than an approximation. Testimony by qualified experts would have authorized the selection of a rate of return even higher than the 8.75% fixed by PSC.

In any event, the reasonableness of the rate of return cannot be decided in isolation from the *rate base* to which the rate of return will be applied, because the reasonableness of the rate of return will vary in accordance with the method or formula employed in fixing the rate base. See Citizens Telephone Co. v. Public Service Commission, Ky., 247 S.W.2d 510. The Attorney General, citing only one figure in an exhibit submitted by one of his witnesses, says that Bell's *capitalization* (end of test period) was only $262,126,000 whereas the rate base fixed by PSC on the basis of net original cost (again, end of test period) was $271,355,-398, indicating that the capitalization was some $9 million lower than the rate base. The Attorney General does not suggest that the use of net original cost is not a proper approach to determination of a rate base, or that the actual net original cost of Bell's properties (used and useful) was not as found by PSC. What he argues is that when a rate of return computed on the basis of actual capitalization is applied to an original-cost rate base higher than actual capitalization, the result is to so increase the true return on *equity* as to make the return unreasonably high.

The Attorney General does not undertake to explain how the original-cost rate base can be and is in excess of the actual capitalization. In the Citizens Telephone Company case, supra, at page 513 of 247 S.W.2d, we said:

"Where original cost less depreciation has been used as the rate base, public regulatory bodies generally have employed the 'cost of capital' test for determining what will constitute a reasonable rate of return. Rose, 'The Bell Telephone System Rate Cases,' 37 Virginia Law Review, page 699. This is because the rate base is determined with relation to capital structure, and it is therefore proper to relate the rate of return also to capital structure. * * *"

In Federal Power Commission v. Hope Natural Gas Co., 320 U.S. 591, 64 S.Ct. 281, 88 L.Ed. 333, the Supreme Court said that one who seeks to set aside a rate order of a public regulatory body carries a heavy burden of making a convincing showing that the order is invalid because it is unjust and unreasonable in its consequences. The Attorney General's showing in the instant case is not of that quality.

The judgment is affirmed.

All concur.