*New trials.*

All concurred.

Public Utilities Commission,
No. 5028.

NEW ENGLAND TELEPHONE & TELEGRAPH COMPANY

*v.*

STATE.

Argued April 10, 1962.

Decided July 16, 1962.

230

*McLane, Carleton, Graf, Greene & Brown* and *Robert D. Bruce* and *John M. Gepson* (*both of Massachusetts*) (*Mr. Kenneth F. Graf* orally), for the company.

*William Maynard,* Attorney General and *Frederic T. Greenhalge,* Assistant Attorney General (*Mr. Greenhalge* orally), for the State.

*John N. Nassikas,* special counsel (by brief and orally), for the Public Utilities Commission.

LAMPRON, J. The company's rates and charges reduced by the order of the Commission which is the subject of this appeal were established by Commission orders dated November 22, and 29, 1957, prescribing an annual rate increase of $1,075,206 designed to produce a fair return of 6.2% upon the company's average net intrastate investment. 39 N. H. P.U.C. 284, 291, 292.

Reports filed with the Commission by the company showed that it had since earned on that investment 6.57% for the year 1958, 6.54% for 1959, and 7.1% for 1960. Conferences between the Commission and the company failed to produce agreement on adjustments to be made in the existing rates. Under authority of RSA 378:7, the Commission on March 16, 1961, ordered an investigation of the company's then currently effective rates and charges to determine whether they were just and reasonable and ordered the company "to appear at said investigation to present evidence as to the reasonableness of its present rates and charges, and if . . . found to be unreasonable or unjust, to show cause why [they] should not be reduced."

After hearing, the Commission in its report filed December 28, 1961, found "that a 45% ratio of debt to total capital is a reasonable capital structure and that 7.75% is a reasonable cost of equity based on this capital structure. Proforming the Company's capital structure as of May 31, 1961 in terms of a 45% debt ratio, using a historical cost rate of debt of 3.49% and 4.75% as the cost of new debt or a composite rate for debt of 4.11% and using 7.75% as the cost of equity . . . [it] found 6.1% is the cost of capital to the New England Telephone and Telegraph Company . . . [and] that 6.3% when applied to an original cost rate base, is a just and reasonable rate of return for the . . . Company's New Hampshire intrastate operations."

The Commission further found that the twelve months ended June 30, 1961, the last complete year of operating results of the company for the period without adjustment "is a reasonable standard for the determination of the level of reasonable rates

and charges." The Commission found further that the company's New Hampshire intrastate net earnings for that test year period produced an earned rate of return of 6.81%. "We find that this rate of return is excessive and that the current rates which produced this rate of return are unreasonable and should be reduced to a level which will yield a rate of return of 6.3% on the Company's average net investment for the test year ended June 30, 1961."

The company contends that the State has failed to prove that the charges existing prior to the present order of the Commission were unjust and unreasonable and that therefore they could not be reduced; that the Commission's report and order are not supported by adequate findings and are contrary to the weight of the evidence and unsupported thereby. The company maintains further that the Commission's theory that the reasonableness of rates and charges must be tested by the standard of rate of return is erroneous and that its disregard of clear and uncontradicted evidence of a declining return resulted in an unlawful order in violation of the company's constitutional rights.

Just and reasonable rates is the touchstone by which the Commission was to assay the company's rates and charges prevailing when it ordered its investigation and the standard by which it was to order and fix new rates. RSA 378:7, 27, 28. *New Eng. Tel. & Tel. Co.* v. *State,* 95 N. H. 353, 356; *New Eng. Tel. & Tel. Co.* v. *State,* 98 N. H. 211, 218; *Federal Power Com.* v. *Hope Gas Co.,* 320 U. S. 591, 602. "The proper rate of return is a matter for the judgment of the Commission, based upon the evidence before it. In fixing the rate the cost of capital may not be ignored; but what that cost may be is also a matter for determination by the Commission upon the evidence. . . . Once determined, it marks the minimum rate of return to which the company is lawfully entitled." *New Eng. Tel. & Tel. Co.* v. *State, supra,* 95 N. H. 353, 361. However in accordance with the statutory directive that rates must be "just and reasonable" (RSA 378:7, 27, 28), the Commission in the exercise of its judgment on the evidence before it can allow a rate of return in excess of the cost of capital. *Chicopee Mfg. Co.* v. *Company,* 98 N. H. 5, 13.

It is therefore apparent that there is more than one rate that may be a just and reasonable rate of return. The area between the lowest rate that is not confiscatory and the highest rate that

is not excessive and extortionate has been referred to as a zone of reasonableness. *Banton* v. *Belt Line Ry.*, 268 U. S. 413, 423; *Atlantic Coast Line* v. *Florida*, 295 U. S. 301, 317; *Wisconsin Telephone Co.* v. *Public Service Comm.*, 232 Wis. 274, 329; *Michigan Bell Telephone Co.* v. *Public Service Commission*, 332 Mich. 7, 26.

The company takes the position that in setting rates in a case where the reasonableness of existing rates is not in issue, the Commission could set the rates at the lowest limit of the zone of reasonableness and such rates could be found just and reasonable. But it contends that in a case where a finding that existing rates are unjust and unreasonable is a prerequisite to reducing those rates, they may not be reduced if they lie within the zone of reasonableness above mentioned.

Regardless of whether the proceeding is one in which the Commission has ordered new and higher rates or one in which it has ordered existing rates to be reduced the ultimate issue before this court on appeal is whether the party seeking to set aside the decision of the Commission has demonstrated "by a clear preponderance of the evidence . . . that such order is unjust and unreasonable." RSA 541:13; *Public Service Co.* v. *State*, 102 N. H. 150, 162. If it were demonstrated that the Commission fixed a rate below the lowest level of the zone of reasonableness, that is, a confiscatory rate, or that it fixed a rate higher than the highest rate within said zone, in other words, an excessive or extortionate rate, the order of the Commission would be set aside as unlawful for such a rate could not be found just and reasonable. It does not follow from this that because current or company-proposed rates fall within the zone of reasonableness, the Commission as a matter of law must approve them as the "just and reasonable . . . rates . . . to be thereafter observed and in force." RSA 378:7, *supra*. The mere fact that rates charged by the company are not extortionate and hence not unreasonable as a matter of law does not establish that they may not be unreasonable as a matter of fact, and some other rate within the zone of reasonableness found to be the reasonable rate to be in force for the future. In determining what the latter rate should be in this case, the Commission expressly found that the rates being collected by the company were unreasonable (RSA 378:7 *supra*) and was not precluded as a matter of law from so doing even though the rates might reasonably have been found

less than extortionate. As long as the reduced rates ordered have not been shown to be unjust and unreasonable the Commission's order does not violate the company's statutory or constitutional rights and will not be set aside. *New Eng. Tel. & Tel. Co.* v. *State*, 98 N. H. 211, 222.

Since our statutes do not provide a formula to be followed by the Commission in determining what are just and reasonable rates, we are not warranted in rejecting the method employed by it unless it plainly contravenes the statutory scheme of regulation or violates our law in some other respect. *New Eng. Tel. & Tel. Co.* v. *State, supra,* 219; *Federal Power Com.* v. *Nat. Gas Pipeline Co.,* 315 U. S. 575, 585. Where, as in this case, the rate base is not in question, the rate of return the company was reasonably entitled to earn thereon is the main issue in controversy in the determination of just and reasonable rates. In fixing such rate of return the cost of capital is an important factor to be determined and considered by the Commission in "the exercise of a fair and enlightened judgment, having regard to all relevant facts." *Bluefield Improv. Co.* v. *Public Service Com.,* 262 U. S. 679, 692; *New England Tel. & Tel. Co.* v. *State,* 95 N. H. 353, 361; *Chicopee Mfg. Co.* v. *Company,* 98 N. H. 5, 11.

In determining that the company's prevailing rates were unjust and unreasonable, and in fixing the reduced rates, the Commission relied primarily on the cost of capital approach as developed by Kosh, an expert witness called by the State. The cost of debt not being in dispute, and the company having no preferred stock, the cost of equity was the major element on which the parties differed in arriving at the cost of capital. Kosh used a fifty-one page exhibit prepared by him which he explained and supplemented by his testimony. He used the earnings-price ratios for the years 1953-1960 for the five Bell operating companies whose stocks are traded, including the New England company; the earnings-price ratios for the latter company separately for that same period; and the earnings-price ratios for the American Telephone & Telegraph Company for the period 1952 to 1958, all as indicating what is currently earned on investments in other business undertakings which are attended by corresponding risks and uncertainties. *Bluefield Improv. Co.* v. *Public Service Com.,* 262 U. S. 679,692; *Peoples Gas Light Co.* v. *Slattery,* 373 Ill. 31, 69; *Central Maine Power Co.* v. *Public Utilities Com'n.,* 153 Me. 228.

Kosh adjusted the above earnings-price ratios by 5% for financing and pressure and made a further adjustment based on his expert judgment. So doing, he arrived at a cost of equity of between 6.95 to 8% and a cost of capital of from 5.5 to 6.05%. He recommended a rate of 6.1% as a full fair rate of return on the company's New Hampshire intrastate operations based on a capital structure with a debt component of 45 to 50 per cent.

The company contends that the Kosh evidence is manifestly insufficient upon which to base findings that the company's current rates are unjust and unreasonable. It further contends that the Kosh evidence, when considered with the evidence offered by witnesses called by the company is likewise insufficient to support the Commission's findings as to the cost of capital and fair rates of return and that in so finding the Commission committed reversible error.

The company attacked the Kosh approach to the determination of the cost of capital on several grounds. Conrad, a witness called by the company, testified that Kosh's view that the price investors are paying for stocks is determined by the current earnings at the time of purchase is invalid because investors expect growth over many years and anticipate future earnings, dividends and market prices in their purchases of equity securities. There was evidence from which it could be found that Kosh recognized these considerations, included their effect in his computations and made allowances for them in arriving at his conclusions as to the ultimate cost of equity.

Conrad also testified that whenever market prices exceed book equity by more than the allowance that Kosh makes for pressure and financing costs, there will be an automatic reduction in the earnings level of the company under review and if rates were fixed or reduced on this basis there would result a drastic decline in the entire market for utility securities. There was evidence from which the Commission could find that such a situation does not always produce an automatic reduction of earnings per share and that the predicted decline would not follow the acceptance of Kosh's recommendations for reducing rates in this case based on his approach to the cost of equity capital.

The company maintains also that Kosh's calculations being based on a 5% allowance for pressure and cost of financing, a recommended dividend payout of 85 to 90% of earnings, and a hypothetical debt ratio of 45 to 50%, resulted in a lower cost

of equity than is warranted. There was evidence in the form of an analysis of the average pressure for the Bell system stock between 1950-1960, from which the Commission could conclude that the 5% allowance was justified. There was also evidence that the average payout ratio for the company between the years 1951-1960 was 91% and further evidence from which the Commission could find that the recommended payout ratio would have no adverse effect on the company's surplus. There was also evidence that the company's debt ratio in 1949 was 58.5%, 43.6% as of December 31, 1960, and that its average debt ratio for the sixteen-year period, 1945-1960, when it raised $600,000,000 of new capital, was 44.5%. Also that the recommended capital structure would furnish the company adequate fixed charge protection or a sufficient absorption ratio.

Witnesses, McIninch, Barker, Lowell and Conrad, called by the company, testified that to attract capital it should earn between 9.5% to 11% on its equity and between 7.75% to 8.5% on its total capital. It was also testified that the company's payout should be about 70% of earnings and that its present actual debt ratio falls within the range of 30% to 40%. The company argues that the rates of earning testified to by its witnesses are comparable to those prevailing in business undertakings with risks and uncertainties comparable to its own and should have been adopted by the Commission. *Bluefield Improv. Co.* v. *Public Service Com.*, 262 U. S. 679, 692.

The testimony of these witnesses, reflecting generally the point of view of the investor, was to be considered by the Commission together with the interest of the consumer in arriving at just and reasonable rates. *Federal Power Com.* v. *Hope Gas Co.*, 320 U. S. 591, 602; *Chicopee Mfg. Co.* v. *Company*, 98 N. H. 5, 11. The Commission is not compelled to accept the opinion evidence of any one witness or of any group of witnesses. Whether it should rely upon the expert testimony presented by the State in preference to that offered by the company is a matter for their judgment based upon the evidence presented. *New Eng. Tel & Tel. Co.* v. *State*, 95 N. H. 353, 361.

We have held in *New Eng. Tel & Tel. Co.* v. *State*, 98 N. H. 211, 220 that because the debt ratio substantially affects the cost of obtaining new capital, the Commission can legally determine a rate of return upon a capital structure different from that actually existing. It should determine a debt ratio that will neither penalize

the ratepayer nor the investor. Nichols, Ruling Principles of Utility Regulation — Rate of Return, *p.* 265. What proportion of the earnings should be paid out and how much should be retained and its effect on the cost of capital, as well as the proper allowance for pressure, are all matters to be considered by the Commission in exercising its judgment in determining the cost of capital and its discretion in fixing the rate of return. *New Eng. Tel. & Tel. Co.* v. *State, supra*; Welch, Public Utility Regulation, *p.* 460.

The Commission found that a 45% ratio of debt to total capital is a reasonable capital structure, that 7.75% is a reasonable cost of equity based on this structure; that the company's cost of capital is 6.1%, and that 6.3% when applied to an original cost rate base, is a just and reasonable rate of return on the company's New Hampshire intrastate operations.

In testing the reasonableness of its 6.1% finding of cost of capital, the Commission found that it "will provide enough revenue for the capital costs of the business, including service on the debt and reasonable dividends on the stock, and at the same time allow reasonable retained earnings and provide adequate interest coverage." It included a schedule showing that a dividend payout of 87.7% at 7.75% cost of equity and a dividend rate of $1.72 would permit retained earnings of 24 cents per share and a debt coverage of 3.3 times. The Commission also found that "although the Company attracted capital and maintained its credit at a dividend rate of $1.60 per share at an average payout ratio of 91% for several years, the increase in the dividend rate to $1.72 per share appears to be a reasonable recognition of investor anticipation of dividends so that the company may continue to attract investor confidence in its enterprise."

The company increased its dividend during these proceedings from $1.72 to $1.90 per share. It argues that if the testings made by the Commission in its order were at the latter rate instead of at the former, they would show a payout ratio of 96.8% instead of 87.7%, and retained earnings of 6 cents instead of 24 cents per share as found by it. The company maintains further that if it paid the $1.90 dividend at the rate of return of 6.3% fixed by the Commission it would be paying out 92.8% of its earnings. The need of such a large payout to maintain its current dividend demonstrates in its opinion that the rate of return set by the Commission "is more likely *below* the cost of capital line of confiscation."

Although the determination of the amount of dividends to be paid stockholders, like the debt ratio of a company, are matters for management, they are not exclusively within its province. As is demonstrated by the above argument of the company, the amount of earnings paid out as dividends has a bearing on the determination of what is a just and reasonable rate of return. Consequently the body charged by law with fixing such a rate must necessarily be entitled to take into account the amount of a company's earnings which are to be paid out as dividends. See *New Eng. Tel. & Tel. Co.* v. *State*, 98 N. H. 211, 220; *New Eng. Tel. & Tel. Co.* v. *Department of Pub. Util.*, 327 Mass. 81, 90; Nichols, Ruling Principles of Utility Regulation — Rate of Return, *p.* 323. A company's rate of return must be sufficient to assure the investor's confidence in the financial soundness of the utility and enough to maintain and support its credit so that it will be able to raise the money necessary to improve and expand its service. *Chicopee Mfg. Co.* v. *Company*, 98 N. H. 5, 11.

There was evidence that from 1951 to 1958 the company's dividend rate was $1.60 and it was increased to $1.72 for 1959 and 1960. There was further evidence that during the period 1951-1960 when the company was paying out 91.1% of its earnings it was able to increase its capital by $478,149,000. We are of the opinion that the Commission in balancing the interests of both the investor and the consumer could find on the evidence that the company could continue to attract sufficient capital to provide good and expanding service for its intrastate operations in this state at a cost of equity of 7.75% and a cost of capital of 6.1% based on a debt ratio of 45% which would constitute a payout of 87.7% if a dividend of $1.72 were paid.

The Commission however "allowed two-tenths of one per cent, in excess of the capital costs of the company in prescribing a rate of return of 6.3%, in order to provide an additional margin over and above the company's capital requirements as assurance for high standards of service to New Hampshire telephone subscribers and continued modernization and expansion of the company's plant and equipment in New Hampshire through its projected construction program. We also recognize that the company management and employees are deserving of an opportunity to produce net earnings in excess of capital costs as an incentive for future efforts and progress in telephone communication in this state. The allowed margin of two-tenths of one

per cent in excess of capital costs equates to an 8.09% return on equity, or to additional intrastate gross revenue of $193,948 or additional net earnings of $92,164.

We cannot say on the evidence that the margin over the cost of capital allowed by the Commission in fixing the company's rate of return as 6.3% on its intrastate operations was not sufficient recognition and reward for its record of achievement and the efficiency of its management. *Missouri S. W. Bell T. Co.* v. *Public Serv. Com.*, 262 U. S. 276, 291. It has not been demonstrated to us that the Commission could not find that the company could attract sufficient capital for its operations at the rate fixed by its order. *New Eng. Tel. & Tel. Co.* v. *State*, 95 N. H. 353, 361.

The Commission found that "the test year for the twelve months ended June 30, 1961, reflecting the actual operating results of the company for the period without adjustment, is a reasonable standard for the determination of the level of reasonable rates and charges." It then related the net earnings for that period to the average net investment of the company and found that they produced an earned rate of return of 6.81%. It further found "that this rate of return is excessive and that the current rates which produced this rate of return are unreasonable and should be reduced to a level which will yield a rate of return of 6.3% on the Company's average net investment for the test year ended June 30, 1961." It then ordered a reduction in the company's revenue "to establish just and reasonable rates to produce a return of 6.3% upon the company's intrastate rate base."

The company attacks the Commission's finding that its currently effective rates were unreasonable on the ground that it disregarded clear and uncontradicted evidence of a declining return for each twelve-month period ending with each month after January 1961. The Commission found that during the three and one-half year period from 1958 to June 30, 1961 "the company earned a rate of return on its average net investment of 6.57% for the year 1958, 6.54% for the year 1959, 7.1% for the year 1960 and 6.81% for the test year ended June 30, 1961. The record of the past three and one-half years shows that the Company is growing and expanding . . . Improvements in productivity should be reflected in continued net earnings sufficient to prevent an attrition in rate of return as new plant is added . . . We are

also mindful that the wage increase of September 1961 is not reflected in the test year. However, the impact of the wage increase on net earnings should be offset by continued improvement in the productivity of the company's plant and by growth of revenues."

There was evidence that the company's traffic operating forces had increased their volume of work by 30% in the years 1956-1960; that the plant forces are now accomplishing the same amount of work they did in 1956 in about 20% less time; and that due to research and development, better equipment and increased mechanization, traffic expenses have been reduced in 1960 some $300,000 from what they were in 1957 despite three increases in basic wages since that time.

It was proper for the Commission in its judgment to use the actual operating results of the company for the twelve months ending June 30, 1961 as the test year by which to determine just and reasonable rates. *Chicopee Mfg. Co.* v. *Company,* 98 N. H. 5, 17. On the evidence before it we cannot say that its action in making no adjustments in the actual operating figures for that period "was . . . beyond the bounds of reason, or erroneous as a matter of law." *Public Service Co.* v. *State,* 102 N. H. 150, 157.

It is unnecessary to cite authority for the proposition that in this jurisdiction it is the function and duty of the Commission to fix just and reasonable rates for the utilities under its jurisdiction. The rate of return, an important factor in so doing, is a matter for the judgment of the Commission based upon the evidence before it. The cost of capital is to be determined and considered by the Commission in fixing such rate of return. Although it is not compelled to use a particular formula to determine such rates it must make findings of facts essential to permit review of its conclusions.

We are satisfied on the record that the Commission had sufficient evidence to make the findings it made and that these findings are sufficient to permit review of its conclusions in this court.

Our statutes contemplate that the Commission will make adjustments in the rates of utilities to maintain them at a just and reasonable level. RSA 378:7. This standard is to prevail whether rates are reduced or increased. RSA 378:27, 28. The Commission using the cost of capital approach to determine a reasonable rate of return concluded that 6.3% was a just and reasonable

rate to be earned by the company. Using this norm it properly found that the currently effective rates, much in excess thereof, should be reduced to bring the company's earnings within the statutory standard of just and reasonable rates. We cannot say that the end result reached by the Commission was contrary to law or violative of the company's constitutional rights. *New Eng. Tel. & Tel. Co.* v. *State*, 98 N. H. 211.

While we affirm the Commission's findings and rulings, we recognize that they are based on a test year which ended June 30, 1961 and that there may be merit in testing them against the actual operating results of the company for the year ending June 30, 1962. Accordingly, we recommend that the Commission, in the light of the records and reports filed with it, examine the order in this case to see whether adjustments, if any, are required by the actual operating results of the company for the year ending June 30, 1962. We presume this can be done "without the complicated, expensive and time-consuming procedure of an entirely new and full-fledged rate hearing." *Chicopee Mfg. Co.* v. *Company*, 98 N. H. 5, 21.

*Remanded.*

All concurred.