Public Utilities Commission,
No. 6160.

### Granite State Alarm, Inc. & a.

*v.*

### New England Telephone & Telegraph Company

June 30, 1971.

*Wadleigh, Starr, Peters, Dunn & Kohls* and *William C. Tucker* ( *Mr. Tucker* orally ) for the plaintiffs.

*Warren B. Rudman,* Attorney General, and *Donald W. Stever, Jr.,* Attorney, for the State.

*McLane, Carleton, Graf, Greene & Brown* and *Robert Upton, II* ( *Mr. Kenneth F. Graf* orally ) for New England Telephone and Telegraph Company.

LAMPRON, J. Appeal under RSA ch. 541 by Granite State Alarm, Inc. and Comex, Inc. from the denial by the Public Utilities Commission of their motion for rehearing on order No. 10,116 of the commission approving an increase in rates for selected service categories in accordance with tariff revisions filed by the New England Telephone and Telegraph Company on June 25, 1970.

On July 8, the commission suspended the effective date of the proposed increased rates and held a hearing thereon on August 11, 1970. In an order dated September 24, effective October 1, 1970, the commission granted the increase in annual revenue of $2,045,000 sought by the company. The commission also approved the proposed rate changes in selected services to provide this increased revenue.

Plaintiffs' appeal raises no issue with respect to the increase in annual revenue granted by the commission. Plaintiffs, however, allege error in the manner in which the burden of the increased revenue is spread among certain services only, especially private line service users, among which they are numbered.

After finding that there was substantial evidence to warrant the increased revenue sought, the commission's report then dealt with

revisions in rates proposed by the company to produce this revenue. "Rather than to have raised the basic telephone rates, the Company filed rate changes for selected items as a consequence of which the customer's bill can be somewhat controlled by his demand for service . . . . The revisions proposed appear to be within reasonable limits for the service rendered and are generally consistent with the rates charged or proposed in other states served by the New England Telephone and Telegraph Company.

. . . .

"One of the problems that arises in any rate change is whether it should be a flat percentage increase 'across the board', or applied to selective items in an attempt to make adjustments within the overall rate structure."

The commission found that the changes proposed "appear to be within reasonable limits. Basic rates for main telephone exchange services remain unchanged. We find that the rate changes proposed will produce a rate structure which should permit the continued growth of telephone service while at the same time providing necessary additional revenues."

RSA 378:10 provides in part that "[n]o public utility shall make or give any undue or unreasonable preference or advantage to . . . any particular description of service . . . or subject . . . [it] to any undue or unreasonable prejudice or disadvantage . . . ." Section 11 provides in part that "[t]he provisions of the preceding section shall not require absolute uniformity in the charges made and demanded . . . when the circumstances render any lack of uniformity reasonable . . . ."

"[I]t is primarily the responsibility of . . . management, which obviously has more intimate knowledge and direct experience with the economics of its own business operations, to establish the various rate structures." Welch, Preparing for the Utility Rate Case 285 ( 1954 ); Welch, Cases and Text on Public Utility Regulation 515-17 ( rev. ed. 1968 ); *see Public Service Co.* v. *State*, 102 N.H. 150, 165 153 A.2d 801, 812 ( 1959 ). It is the duty of the commission, however, to see that under the tariff proposed by the company no class of service is discriminated against or receives preferential treatment. *Company* v. *State*, 95 N.H. 353, 364, 64 A.2d 9, 18 ( 1949 ); *Chicopee Mfg. Co.* v. *Company*, 98 N.H. 5, 19, 93 A.2d 820, 830 ( 1953 ). On this appeal we are called upon to determine whether the clear preponderance of the evidence established that the order of the commission approving as reasonable the rates allocated to selected service categories,

especially private line service, was "unjust or unreasonable". RSA 541:13; *Public Service Co.* v. *State*, 102 N.H. 150, 164, 153 A.2d 801, 811 ( 1959 ). The burden of so proving rests on the plaintiffs. *New England Tel. & Tel. Co.* v. *State*, 104 N.H. 229, 233, 183 A.2d 237, 241, 242 ( 1962 ).

Plaintiffs' first claim is that the rates are unreasonable and un- just because "the selective rate increases were not in any way based upon increases in the cost of providing the services, but solely upon what the Telephone Company considered to be the relative value of the service to the user."

Neither our statutes nor the decisions of this court require that the commission use a particular formula or a combination of formulas in performing its statutory duty of determining whether rates are just and reasonable among themselves as well as in total. *Company* v. *State*, 95 N.H. 353, 364 64 A.2d 9, 18 ( 1949 ); *New England Tel. & Tel. Co.* v. *State*, 104 N.H. 229, 234, 183 A.2d 237, 241 ( 1962 ). In arriving at its conclusions, the commission, in addition to the testimony presented at the public hearing, could rely also on the exhibits introduced, the records and reports required to be filed with it by the company, and on the commission's own expertise as well as that of its staff. *New England Tel. & Tel. Co.* v. *State, supra* at 241; *see Gaines- ville Utilities Dep't* v. *Florida Power Corp.*, 402 U.S. 515, 29L. Ed.2d 74, 91 S. Ct. 1592 ( 1971 ).

Plaintiffs prior to the hearing did not seek the production by the company of any data, records, or other evidence relating to the proposed rates. At the hearing plaintiffs did not call witnesses to present evidence as to the unreasonableness of the proposed increases, limiting themselves to the cross-examination of the two witnesses presented by the company. Martin, the company's rate supervisor, testified that the proposed tariffs for the selective rate increases were prepared under his supervision and direction, and furnished documents in support which were introduced as exhibits. He testified that private lines are graded based on their use, the non-voice signal system used by plaintiffs being one series, and voice and sophisticated data carrying lines being other series. Each series carries differing rates and the series used by the plaintiffs appears to be a minimal proportion of the increased revenue allowed.

Martin testified on cross-examination that it is impractical "to base rates on costs in this context" and that "the relative value of the service to the user determined the increase." He testified

further that no increase was proposed in the basic rates to residences and business users. The reason given was that "Basic telephone rates have increased through the years constantly with revenue requirements" but the private line rates, the type used by plaintiffs, "really have not kept pace in my opinion," and are being brought "up to pace." This factor and the "various values to users" are both involved in the proposed rates. Martin further testified that in his opinion the new rates produce the needed revenue "in a just and reasonable manner."

In support of their position that cost should be the factor, or at least a major determining factor, in fixing the rate structure, plaintiffs advance the following argument. The present need for increased revenue was necessitated by a large construction program and increased labor costs which were required in large measure to serve subscribers whose rates are not being increased. In response the company maintains that many of the costs of rendering a particular service are common costs of rendering all services. Witness Martin testified that a precise cost analysis to serve as a basis to base rates in this context is impracticable. "[M]athematically precise calculations of rates of return and costs cannot be made in respect to minute segments of a huge business." *Chicago Board of Trade* v. *United States*, 223 F.2d 348, 351 (D.C. Cir. 1955). A cost study would involve a multitude of value judgments not unlike those which the commission could find were the basis of the conclusions of witness Martin. *See New England Telephone & Telegraph Co.,* 84 P.U.R. 3d 130, 137 (Mass. D.P.U. 1970).

The theory which will require the customer "'to pay no more and no less than his fair share of the cost to the utility serving him . . . is virtually impossible to translate into precise mathematical practice'". *See Public Service Co.* v. *State*, 102 N.H. 150, 165, 153 A.2d 801, 812 (1959). Furthermore cost is but one of the many factors which the commission can consider in the "complex and difficult task" entrusted to it by the legislature of seeing that rate increases are distributed justly and reasonably so as to eliminate discrimination and unfairness among the rate payers. *Chicopee Mfg. Co.* v. *Company,* 98 N.H. 5, 19, 93 A.2d 820, 829 (1953); *see Pacific Telephone & Telegraph Company,* 75 P.U.R. (n. s.) 379, 409 (Cal. P.U.C. 1948). The ultimate test of the commission's decision is whether on the evidence before it the commission was warranted in concluding that the rates were "just and reasonable." *New England Tel. & Tel. Co.* v. *State,* 98

N.H. 211, 218, 97 A.2d 213, 219 ( 1953 ); *see Gainesville Utilities Dep't* v. *Florida Power Corp.*, 402 U.S. 515, 29L. Ed. 2d 74, 91 S. Ct. 1592 ( 1971 ).

Plaintiffs' second argument is that "the difference in the rates charged for a leg of an intraexchange private line channel and a local leg of an interexchange channel is discriminatory." In the intraexchange situation one leg of the private line goes from the plaintiffs' office to the company exchange and another leg goes from the exchange to the premises of plaintiffs' customer. In the interexchange situation, in addition to two legs in each of two exchanges, there is need for a third leg connecting the two company exchange offices. Witness Martin testified that there is no significant difference in the function of the legs in each exchange office. Plaintiffs point out that a different charge is made for a leg when it is part of an interexchange hookup. In addition a mileage charge is made for the leg needed to connect the two exchanges. Plaintiffs conclude that "the same user is charged different rates for the same service when he operates both within and without of an exchange."

The company maintains that plaintiffs' argument necessarily equates service to the physical facilities by which it is rendered. It argues that service is not a physical plant but the sum of the relationships between the utility and the customer. The company points out that a residence telephone service and a business telephone service which have long been classified as different services bearing different rates can be provided by the same facilities. Witness Martin testified that the intraexchange service and the interexchange service used by plaintiffs is each viewed and classified as a single unit or channel and not by its component parts. The commission could properly find that this was a reasonable classification and that the rates assigned to each service were just and reasonable.

We hold that the plaintiffs have failed to overcome the presumption of reasonableness given by the legislature to the findings of the commission. RSA 541:13. We hold further that the order of the commission was not beyond the bounds of reason or erroneous as a matter of law. *Public Service Co.* v. *State*, 102 N.H. 150, 157, 153 A.2d 801, 807 ( 1959 ).

*Appeal dismissed.*

KENISON, C.J., did not participate in the consideration of this case; GRIFFITH J., did not sit; the others concurred.