Water Supply and Pollution Control Commission
No. 7241

CITY OF CONCORD

v.

WATER SUPPLY AND POLLUTION CONTROL COMMISSION

October 31, 1975

*Paul F. Cavanaugh,* city solicitor, by brief and orally, for the city of Concord.

*Warren B. Rudman,* attorney general, and *Donald W. Stever, Jr.,* assistant attorney general *(Mr. Stever* orally), for the commission.

GRIFFITH, J. This is an appeal under RSA ch. 541 from an order of

the New Hampshire Water Supply and Pollution Control Commission, pursuant to RSA 148:22, requiring the city of Concord to cover its high service distribution reservoir. The order was suspended by order of this court on July 31, 1975, pending hearing on the merits. *City of Concord, v. Water Supply and Pollution Control Commission,* 115 N.H. 453, 343 A.2d 220 (1975). The brief and argument of the city are restricted to a claim that the evidence presented to the commission was not of sufficient weight to sustain its decision.

RSA 541:13 (1974) provides the standard for review of the commission's orders by this court. It provides that "all findings of the commission upon all questions of fact properly before it shall be deemed to be prima facie lawful and reasonable; and the order or decision appealed from shall not be set aside or vacated except for errors of law, unless the court is satisfied, by a clear preponderance of the evidence before it, that such order is unjust or unreasonable."

The commission found that the city's "high service distribution reservoir is a source of bacterial and viral contamination of a portion of the city of Concord's water distribution system. The reservoir has a history of vandalism, unauthorized swimming and access by gulls and other disease-carrying birds and does not meet proposed standards under the Safe Drinking Water Act. Water from the reservoir does not meet established drinking water standards."

It appears from the record that beginning in 1969, the commission urged the city of Concord to cover its open distribution reservoir because of the high bacterial count in the water. Federal funds available for this purpose sometime prior to the commission hearings in 1975 were utilized for other purposes. The commission held hearings on March 12, 1975, and April 9, 1975, to have the city show cause why the commission should not order the city to cover the reservoir. At these hearings substantial evidence was presented by the staff and experts of the continuing high level of bacterial count in samples taken directly from the uncovered reservoir which contained water for distribution after it had gone through the city filtration plant. Expert testimony was received that the reservoir was open to pollution from sea gulls, water fowl and humans, and was thereby subject to viral contamination. Based upon a review of the record, we cannot find that the order of the commission was "unjust or unreasonable." RSA 541:13 (1974).

The city argues that the commission was not given the records of actual bacteriological counts taken of water from the reservoir except for the years 1967-1969 but relied upon testimony of their staff as to high counts in subsequent years. The commission may properly

base its decision on the expertise of its members, the expertise of its staff, and upon information obtained and reviewed by its staff, all of which were available to the city. *New England Tel. & Tel. Co. v. State,* 113 N.H. 92, 102, 302 A.2d 814, 821 (1973); *Granite State Alarm, Inc. v. New England Tel. & Tel. Co.,* 111 N.H. 235, 238, 279 A.2d 595, 597-98 (1971); *see Roy v. Water Supply Comm'n,* 112 N.H. 87, 289 A.2d 650 (1972).

*Appeal dismissed.*

All concurred.