Public Utilities Commission
No. 7461

## Windham Estates Association

### v.

## The State of New Hampshire & a.

May 31, 1977

420

*Hamblett, Kerrigan, LaTourette & Lopez* and *Martin J. McMahon, Jr.*, of Nashua (*Mr. McMahon* orally), for the plaintiff.

*Sayer & Giordano*, of Salem (*Mr. James A. Sayer, Jr.* orally), for W & E Artesian Well Company, Inc.

*David H. Souter*, attorney general, and *John L. Ahlgren*, assistant attorney general, waive brief and oral argument for the state.

LAMPRON, J. Plaintiff appeals from an order of the public utilities commission (hereinafter "commission") dated February 4, 1976, granting a rate increase of 114% to W & E Artesian Well Company, Inc., (hereinafter "company"). Plaintiff appeared as protestant in the proceedings before the commission. Plaintiff's motion for rehearing on this matter was denied by the commission and plaintiff subsequently filed this appeal under RSA ch. 541.

Plaintiff challenges the commission's order on several grounds. The primary questions concern the sufficiency of the evidence to support the rate base, the current operating expenses, and the rate of return allowed by the commission, as well as the use of 1973 test year revenue figures rather than 1974 revenue figures in determining the company's need for additional revenue. Plaintiff argues that the rates ultimately approved by the commission are unreasonable for the services provided. Plaintiff also challenges the commission's granting of the water company's motion to waive an audit by an independent public accountant which the commission had required after the hearing on the company's petition for a rate increase. Finally, plaintiff argues that the rate increase approved by the commission should be suspended pending final resolution of this matter.

W & E Artesian Well Company, Inc., serves approximately 100 consumers in Windham, New Hampshire. Upon petition of Mr. Barlow, the company's sole owner, the commission granted the

company a franchise to operate as a public utility effective April 1, 1970. On July 19, 1974, the company filed with the commission a revised tariff, seeking to increase its rates. The proposed rates constituted an increase of 133.9%, determined on a rate base of $101,901 and a cost of capital of 9.5%. These calculations were based on 1973 as the test year.

A hearing on the company's petition was held on February 6, 1975, by the commission. At the conclusion of the hearing, plaintiff moved that the commission investigate and audit the financial affairs of the water company to ascertain the proper rate base and operating expenses. On February 25, 1975, the commission notified the water company that it was required to submit a detailed rate base calculation accompanied by an audit certificate furnished by an independent public accountant. On November 7, 1975, the company submitted a revised rate base calculation for the 1973 test year and moved that the audit requirement be waived due to the company's lack of funds. Although plaintiff objected to this motion and requested a hearing thereon, no further action was taken by the commission concerning an audit.

On February 4, 1976, the commission issued its order No. 12,126 granting the company a 114% rate increase. In calculating this rate increase the commission used the revised rate base of $89,791. It also decreased the expenses proformed for meter repairs and disallowed the expenses proformed for preventive maintenance. By adding two-tenths of one percent to the pro forma cost of money of 9.7% the commission found a just and reasonable rate of return to be 9.9%.

 Plaintiff argues that the rate base allowed by the commission is not supported by the evidence. Of particular concern to it is the accounting for certain funds contributed in aid of construction. Such funds, supplied by consumers, must be deducted from the rate base as these are funds upon which the investors are not entitled to any return. *Public Service Co. v. State*, 113 N.H. 497, 506, 311 A.2d 513, 519 (1973); *Utilities Comm'n v. Heater Utils., Inc.*, 288 N.C. 457, 219 S.E.2d 56 (1975); 1 A. Priest, Principles of Public Utility Regulation 177 (1969). At the commission hearing, counsel for the company indicated that the stated rate base of $101,901 in the original filing should be decreased by $11,200., representing an amount paid by a Mr. Armstrong as a contribution in aid of construction. However, plaintiff called Armstrong as a witness and he testified that the amount which he had paid for the

installation of a water system to the twenty-seven lots he owned and referred to as the Sherndor extension, was $23,625. This constituted an extension to the company's water system.

In the recalculated rate base submitted on November 7, 1975, the company did increase by $23,625 the amount subtracted as contributions in aid of construction. The amount of long term debt was also decreased by $11,200.00. However, the figure for gross physical plant, from which contributions in aid of construction are deducted, was increased by $12,425.00. This amount reflected the increased value of mains in the system. At the hearing, Armstrong had testified that the system was installed in 1968 or 1969 and that his payment of $23,625 was made in 1972. In its report and order of February 4, 1976, the commission specifically stated that these accounting adjustments properly reflected the Sherndor extension transaction. This is a recognized manner of handling contributions in aid of construction. *Utilities Comm'n v. Heater Utils., Inc.*, 288 N.C. 457, 219 S.E.2d 56 (1975).

Plaintiff next argues that the company failed to prove that all of the assets included in the rate base are used or useful in the public service, *Company v. State*, 95 N.H. 353, 364, 64 A.2d 9, 18 (1949), and that the allowance of the rate base was therefore unlawful. Plaintiff questions the inclusions of certain items in particular. There was testimony by Barlow that the company's well No. 1 had been abandoned because it ceased to produce sufficient water to be used in the system. He also testified that the amounts carried on the company's books for both well No. 1 and well No. 2 did not represent the wells alone but included other component parts such as storage tank, pump station, pump, and mains. He further testified that the remaining components of well No. 1, including the storage tank, were still used, being held in reserve in case of fire. However, there was no testimony as to whether the amount representing well No. 1 and its component parts had been properly reduced by an amount representing the value of the abandoned well. The company in its brief before this court stated that well No. 1 and its components originally carried at $21,511 had been reduced the following year to $12,511 to reflect the fact that the well was dry. The matter of whether well No. 1 was assigned a value in the rate base for the test year 1973 was in issue at the hearing before the commission. We cannot assume that the commission failed to consult its own records which contain the annual

reports of the company, RSA 374:15, and ordered an increase in rates on a rate base which included a value for dry well No. 1.

■ Plaintiff also questions the inclusion of certain flexible pipes, components of well No. 2, which were used to provide an emergency overground supply line in 1965 when well No. 1 went dry and well No. 2 was dug. Plaintiff relies on dicta in *Petition of Central Vermont Public Service Corp.*, 116 Vt. 206, 220, 71 A.2d 576, 585 (1950), to support its position that consumers should not be required to reimburse the company for investments in assets required by an emergency. Plaintiff's reliance on *Central Vermont* is misplaced. That case was concerned with the impairment of the utility's capital structure and losses to stockholders, not with the inclusion of emergency related assets in the utility's rate base. The testimony at the hearing in this case indicated that the investment in the flexible pipes was necessary to continue service to the company's customers during the emergency period. As these are assets which the company still owns, and which it can and may still use, we cannot conclude that the commission acted unreasonably or unlawfully by including them in the rate base.

■ Plaintiff argues, however, that those assets which are held on a standby basis, primarily the flexible pipes and the company's fire hydrants, should not be included at full value, but should be included at a figure reflecting their value as standby equipment. Plaintiff relies on the case of *Solar Electric Co. v. Pennsylvania Public Utility Commission*, 137 Pa. Super. 325, 9 A.2d 447 (1939), in support of its position. However, the commission is not required to use any particular method of valuation so long as the method adopted results in a just and reasonable rate base. *New Eng. Tel. & Tel. Co. v. State*, 98 N.H. 211, 218, 97 A.2d 213, 219 (1953) ; *Chicopee Mfg. Co. v. Company*, 98 N.H. 5, 10, 93 A.2d 820, 824 (1953). The commission is not required to adopt the "fair value" method employed in Pennsylvania, but may use a valuation based on the "original cost" method of rate base determination. 1 A. Priest, Principles of Public Utility Regulation 140, 148, 164–65 (1969). The commission therefore did not err by allowing the pipes and hydrants to be valued into the rate base in the same manner as the other assets of the company. 1 Priest, *supra* at 176.

■ Plaintiff also challenges the inclusion of approximately $26,000 in assets in the rate base which the company had not in-

cluded in 1969 when it applied for a franchise as a public utility. This figure does not represent any assets acquired since then, but constitutes an amount which had apparently been unintentionally omitted in 1969. Mr. Lord, accountant for the company, testified that approximately three years before W & E Artesian Well Company, Inc., was incorporated he had removed this amount from the books which he kept for Barlow. Both he and Barlow testified that this amount represented assets which the company owned in 1969. Although the omission was discovered while the petition for a franchise was pending, Barlow testified that the company decided it could absorb the loss resulting from the understated rate base until it had more consumers and increased revenues. As these are assets which are properly includable in the company's rate base, the company's failure to include them in 1969 does not preclude it from doing so now. *Florida Cities Water Co. v. Bd. of County Commissioners*, 334 So. 2d 622, 623 (Fla. App. 1976).

Plaintiff also contends that the commission erred in using 1973 as a test year when actual 1974 revenue figures were available. Although the commission may rely on reports and records which the utility is required to file with it, *New Eng. Tel. & Tel. Co. v. State*, 113 N.H. 92, 101–102, 302 A.2d 814, 821 (1973), the company's annual report for 1974 was filed several weeks after the hearing on the company's petition had been held. In July of 1974 when the company's petition for a rate increase was filed the figures for 1974 could not yet be ascertained and the pro forma projections of revenue based on 1973 as a test year were proper. The nature of the regulatory process will necessarily result in the use of test year figures which may not most accurately represent the current financial picture. However, considering the need of the commission to terminate its receipt of information, the commission is not required to collect and use the most current figures available. *New Eng. Tel. & Tel. v. State*, 113 N.H. at 99, 302 A.2d at 819; *Public Service Co. v. State*, 102 N.H. 71, 73, 150 A.2d 521, 522 (1959). Adjustments of the 1973 test year figures on the basis of the 1974 report was a matter within the discretion and expertise of the commission. *Public Service Co. v. State*, 102 N.H. 150, 163, 153 A.2d 801, 810 (1959); *see L. S. Ayers & Co. v. Indianapolis Power & Light Co.*, 351 N.E.2d 814 (Ind. App. 1976). Plaintiff has not shown that the commission acted unreasonably in basing its rate determination on the 1973 test year figures.

Plaintiff challenges the allowance of certain operating expenses on the grounds that they were never actually paid and that the company had not submitted proof of both the necessity and the reasonableness of these items. These expenses included allowances for officer's salary, office salary, meter reading, and maintenance labor. Had these items actually been paid, the commission could have presumed them to be expenses properly incurred by the company. 1 A. Priest, Principles of Public Utility Regulation 422–23 (1969). Neither the fact that the company had not actually paid for these services in the past, nor the fact that Barlow and his wife were the people performing the services renders these expenses unreasonable. *Id.* at 423–24. The commission did not err in allowing them.

Plaintiff challenges the 9.9% rate of return allowed by the commission on the ground that it is not supported by sufficient evidence. It is an established rule that the utility is entitled to a minimum rate of return equal to the cost of capital. *Pennichuck Water Works v. State,* 103 N.H. 49, 52, 164 A.2d 669, 671 (1960); *Company v. State,* 95 N.H. 353, 361, 64 A.2d 9, 16 (1949). How much more than this will be allowed as a rate of return is a matter to be determined by the commission on the basis of what is "just and reasonable." *Chicopee Mfg. Co. v. Company,* 98 N.H. 5, 13, 93 A.2d 820, 825–26 (1953). The commission found 11% to be a reasonable cost of equity, and accepted the company's pro forma cost of capital of 9.7%. To this latter figure the commission added two-tenths of one percent to arrive at the 9.9% rate of return figure. While the exact basis for the commission's findings is not readily apparent from the record, this is an area in which the commission has sufficient expertise to fill whatever deficiencies there may have been in the company's evidence. *Boise Water Corp. v. Idaho Pub. Utils. Comm'n,* 97 Idaho 832, 555 P.2d 163, 174 (1976); *see New Eng. Tel. & Tel. Co. v. State,* 104 N.H. 229, 234, 183 A.2d 237, 241 (1962); *Chicopee Mfg. Co. v. State,* 98 N.H. at 12, 93 A.2d at 825. Plaintiff has not demonstrated by a clear preponderance of the evidence that the rate of return of 9.9% allowed by the commission is unreasonable. Accordingly this rate of return must stand. RSA 541:13; *New Eng. Tel. & Tel. Co. v. State,* 104 N.H. at 233, 183 A.2d at 240–41.

Plaintiff advances the further argument that the rates allowed by the commission are unreasonable on the grounds that they constitute "a return on unproductive or unnecessary capital", and be-

cause "imprudent and unnecessary expenses may not be charged to the consumer." If the rate base is properly determined, and we hold it has been, it will include only those investments upon which the company is entitled to a return, thus removing those grounds for plaintiff's objections. As we have found no error in the expenses allowed by the commission, those objections by plaintiff are also unfounded.

Plaintiff also claims as error the commission's granting of the company's motion for waiver of the audit required by the commission following the February 1975 hearing. Plaintiff argues that the requirement of the audit is itself proof of the unlawfulness of the rate base allowed by the commission without an audit. The company was required to present evidence to support its request for a rate increase, RSA 378:8, and the commission was required to investigate the basis for and reasonableness of the proposed rates, RSA 378:7. However, there is no requirement that this be done by way of an independent audit of the company's financial affairs. The commission could, in the exercise of its discretion, waive the audit it had previously required, based on the company's assertion of lack of funds. Plaintiff also argues that RSA 365:28 required the commission to hold a hearing before it could reverse its earlier order. However, the audit requirement was set forth in a letter from the commission to the company, not in a formal order. The audit requirement therefore did not constitute an order for purposes of RSA 365:28 and the commission was not required to hold a hearing prior to rescinding the audit requirement.

Finally, plaintiff argues that the rate increases authorized by the commission should be suspended pending final resolution of this case. In view of the result reached, we find no need to consider this matter.

*Appeal dismissed.*

DOUGLAS, J., did not sit; the others concurred.