Public Utilities Commission
No. 78-174

## Legislative Utility Consumers' Council

### v.

## Granite State Electric Company & a.

May 17, 1979

*J. Michael Love*, of Manchester, by brief and orally, for the Legislative Utility Consumers' Council.

*Orr & Reno*, of Concord (*Richard B. Couser* orally), for Granite State Electric Company.

*Thomas D. Rath*, attorney general (*Dom S. D'Ambruoso*, special counsel, orally), for the Public Utilities Commission.

BOIS, J. This is an appeal brought pursuant to RSA 541:6 from order No. 13,159 entered on May 23, 1978, by the public utilities commission (commission) following its investigation under RSA 378:5 of a proposed tariff charge filed by Granite State Electric Company (Granite State) on April 22, 1977. Two parties appeared as intervenors during the proceedings, the Legislative Utility Consumers' Council (LUCC), as authorized by RSA 363-C:8 III (Supp. 1977), and Lebanon

In Service To Each Neighbor (LISTEN), a public interest group. Only the LUCC, however, is a party to this appeal. The LUCC brought this appeal following the commission's granting of a $913,912 annual revenue increase to Granite State.

The LUCC asks us to review four aspects of the commission's order. It challenges the allowance to Granite State of a .5% attrition factor which was added to the rate of return, the allowance of increased depreciation expenses in calculating the test-year operating expenses, the allowance of a .8% adjustment to the cost of common equity for market pressure and costs of financing, and the inclusion of customer deposits and advances in the rate base.

Granite State, engaged in the retail sale and distribution of electricity in twenty-three New Hampshire communities, requested a $1,089,000 annual revenue increase in its April 22, 1977, tariff proposal to become effective on May 23, 1977. By order No. 12,731, the commission suspended the implementation of the proposed revenue increase, RSA 378:6, pending investigation and public hearings. RSA 378:5.

The commission conducted its procedural hearing on May 18, 1977. Hearings on the merits began on June 14, 1977. As the hearings progressed, Granite State and the intervenors conferred privately in an attempt to settle certain issues. The parties reached no agreement, however, on the ultimate issue concerning the amount of the allowable revenue increase. By order No. 12,872, the commission authorized Granite State to establish, under bond, temporary rates sufficient to produce an annual revenue increase of $750,000. RSA 328:27. While the temporary rates were in effect, the commission held further hearings on the merits, at which counsel for all parties were permitted to engage in extensive cross-examination of the witnesses. The voluminous record indicates that the commission hearings provided a detailed inquiry into the financial status of Granite State and the many issues involved in the ratemaking process.

In *Legislative Util.Consumers' Council v. Pub. Serv. Co.*, 119 N.H. 332, 402 A.2d 626 (1979), we reviewed the commission's order granting a revenue increase to the Public Service Company of New Hampshire. We engaged in a comprehensive discussion of the role of the commission and the standard of review applied in appeals from its decisions. We emphasized that "this court does not sit as a trier of fact in appeals from the commission," *id.* at 340, 402 A.2d at 631, and that "we approach our review . . . fully aware that our narrow role is to determine whether the [commission's] finding[s] [are] 'unjust or unrea-

sonable by a clear preponderance of the evidence.'" *Id.* at 340, 402 A.2d at 634, *quoting Legislative Util. Consumers' Council v. Pub. Util Comm'n,* 118 N.H. 93, 99, 383 A.2d 89, 92 (1978); *see* RSA 541:13. Yet we will rule upon certain individual findings of the commission that are crucial to our ultimate decision upon the fairness of the overall rate order. *See, e.g., New England Tel. & Tel. Co. v. State,* 95 N.H. 353, 357, 64 A.2d 9, 15 (1949).

I

### Attrition

The LUCC has challenged the commission's allowance of a .5% attrition factor as an error of law and as against the preponderance of the evidence. It argues that, as a matter of law, the essential findings have not been made to support the attrition allowance, and that the evidence presented to the commission shows that Granite State has sound financial prospects.

Attrition, the "'traveling companion'" of inflation, is the "wearing away of the rate of return." E. NICHOLS & F. WELCH, RULING PRINCIPLES OF UTILITY REGULATION—RATE OF RETURN 55 (Supp. 1964). An appropriate ratemaking device to offset attrition is to add a specific percentage to the rate of return over that actually calculable. *Id.; accord, New England Tel. & Tel. Co. v. State,* 113 N.H. 92, 97, 302 A.2d 814, 818 (1973). Attrition results when "demands for goods and services at increasing costs upset the balance between revenues, investments and expenses" so that the utility company does not actually realize the rate of return that is authorized. *New England Tel. & Tel. Co. v. State,* 113 N.H. 92, 96, 302 A.2d 814, 818 (1973); *accord, Goodman v. Pub. Serv. Comm'n,* 497 F.2d 661, 671 (D.C. Cir. 1974). For example, from 1973–1977, Granite State actually earned annual rates of return of between 6.27% and 10.05%, although the commission's rate order was designed to produce a rate of return of 11.3%.

Because "[r]ate-making cannot be reduced to an exact science by which a mathematically precise rate of return can be produced by a competently programmed computer," *New England Tel. & Tel. Co. v. State,* 113 N.H. at 95, 302 A.2d at 817, the commission must be given wide latitude to exercise its judgment in determining components of the rate of return. *Id.* When the commission makes adequate and essential findings of fact that are supported by record evidence, *see New England Tel. & Tel. Co. v. State,* 95 N.H. 353, 359, 64 A.2d 9, 15 (1949), we will not substitute our own judgment for its decision. *See Legislative Util. Consumers' Council v. Pub. Serv. Co.,* 119 N.H. 332, 340, 402 A.2d 626, 631 (1979).

■ We agree with the LUCC that the commission's findings concerning allowance to Granite State of a .5% attrition factor are sparse. The commission would be wise to incorporate more elaborate findings into future rate order reports. This court long ago warned that its function of reviewing administrative orders must be facilitated by agency findings. *New England Tel. & Tel. Co. v. State*, 95 N.H. 353, 359, 64 A.2d 9, 15 (1949); *accord, Soc'y For The Protection of New Hampshire Forests v. Site Evaluation Comm.*, 115 N.H. 163, 173, 337 A.2d 778, 786 (1975). Although detailed and specific reasons for the attrition finding would have enhanced our ability to review the commission's order, they are not mandated. *Soc'y For The Protection of New Hampshire Forests v. Site Evaluation Comm.*, 115 N.H. at 173, 337 A.2d at 786.

■ Because the commission has disclosed erosion of earnings as the basis of its attrition finding in its report, and that finding does have support in the record, we will affirm it. The testimony shows that Granite State, characteristic of all electric utility companies in the past several years, has experienced an unprecedented increase in operating expenses due to the monumental rise in the cost of energy. We have recognized increased operating expenses as a hallmark of attrition. *New England Tel. & Tel. Co. v. State*, 113 N.H. 92, 97, 302 A.2d 814, 818 (1973). The LUCC has not shown by a clear preponderance of the evidence that the commission's allowance of a .5% attrition adjustment to the rate of return was unwarranted. RSA 541:13; *Legislative Util. Consumers' Council v. Pub. Serv. Co.*, 119 N.H. 332, 340, 402 A.2d 626, 631 (1979); *see Pub. Serv. Co. v. Town of Ashland*, 117 N.H. 635, 641, 377 A.2d 124, 127 (1977).

## II

### *Depreciation*

The LUCC presents three arguments challenging the commission's decision to include $620,000 of depreciation in Granite State's test-year operating expenses. The company had increased its depreciation by $30,000 in the test-year by shortening certain service lives used in calculating it. The LUCC argues that Granite State gave no notice of the change in calculating depreciation, that it failed to meet its burden of proof in establishing the level of depreciation, RSA 378:8, and finally, that allowing increased expenses while including customer deposits and customer advances in the rate base results in the company receiving a depreciation expense on customer contributed plant. We reject all three of the LUCC's propositions.

The LUCC improperly relies upon a commission letter and attached account circular dated August 1, 1968, requiring utilities to submit their proposed depreciation rates thirty days in advance of the proposed effective date. The 1968 circular has been superseded by a subsequent commission order adopting the Federal Power Commission Uniform Classification of Accounts For Electric Utilities, which makes no provision for advance notice of proposed depreciation rates. Order No. 9868, 55 N.H. PUB. UTIL. COMM'N REP. 50 (1970).

■■ Granite State has also met its burden of proof, RSA 378:8, in establishing $620,000 as its depreciation expense for the test-year. In performing its ratemaking function, "the commission may rely on reports and records which the utility is required to file with it." *Windham Estates Ass'n v. State*, 117 N.H. 419, 425, 374 A.2d 645, 649 (1977); *accord, Legislative Util. Consumers' Council v. Pub. Serv. Co.*, 119 N.H. 332, 340, 402 A.2d 626, 632 (1979), *citing New England Tel. & Tel. Co. v. State*, 113 N.H. 92, 101–02, 302 A.2d 814, 821 (1973); *Granite State Alarm, Inc. v. New England Tel. & Tel. Co.*, 111 N.H. 235, 238, 279 A.2d 595, 597–98 (1971). Granite State presented the commission with a report of its depreciation expense on a monthly basis during the test-year. There is a "presumption of good faith and correctness in basic' records required to be kept by a public service company." F. WELCH, CONDUCT OF THE UTILITY RATE CASE 207 (1955). If neither the commission nor the intervenors dispute the accuracy of the utility's records by affirmative evidence, their regularity is presumed. *Id.* at 206. No such affirmative evidence has been presented in the present case.

■ The amount of depreciation allowable in a utility company's operating expenses is a judgment call, a matter of fact for the commission's determination. *New England Tel. & Tel. Co. v. State*, 95 N.H. 353, 367, 64 A.2d 9, 20 (1949). The commission's finding has the "presumption of reasonableness" and must be overcome by evidence to the contrary. *Id.* A preponderance of the evidence before us does not show that the commission's determination of Granite State's test-year depreciation expenses is erroneous. RSA 541:13; *Legislative Util. Consumers' Council v. Pub. Serv. Co.*, 119 N.H. 332, 340, 402 A.2d 626, 632 (1979); *cf. Windham Estates Ass'n v. State*, 117 N.H. 419, 424–25, 374 A.2d 645, 649 (1977) (upholding commission's approval of the inclusion of certain assets in the rate base even though the company had previously not included them).

Our order to deduct customer deposits and customer advances from the rate base, outlined later in this opinion, obviates the LUCC's argu-

ment that allowing depreciation expenses while including these items in the rate base allows the company to receive a depreciation expense on customer contributed plant.

## III

### *Cost of Common Equity*

The LUCC asks us to review the commission's decision to adjust by .8% the cost of common equity in order to reflect market pressure and the cost of financing. It claims that these factors should not have been considered because (1) New England Electric System (NEES), parent company of Granite State, is not contemplating a stock issuance; (2) these factors are either subject to management control or purely speculative; and (3) consideration of NEES's market pressure and cost of financing is improper because it is not a party in the case.

■■ It is a fundamental principle of ratemaking that a rate order must provide the utility company sufficient revenue to assure the potential investor's confidence, *New England Tel. & Tel. Co. v. State*, 104 N.H. 229, 238, 183 A.2d 237, 244 (1962), as well as to enable it to meet its obligation to provide adequate service in the future. *Chicopee Mfg. Co. v. Pub. Serv. Co.*, 98 N.H. 5, 11, 93 A.2d 820, 825 (1953); E. NICHOLS, RULING PRINCIPLES OF UTILITY REGULATIONS 72–75 (1955). Two expert witnesses who testified before the commission stated that market pressure and cost of financing were factors that should be recognized in setting Granite State's fair rate of return. There is no evidence in the record that persuades us that recognition of these factors is appropriate only when an issuance of stock is contemplated for the near future. Nor is there evidence that persuades us that these factors are either under such discretionary management control or too speculative to quantify in order to be taken into account in determining the overall cost of capital.

■ Finally, we find no merit in the LUCC's contention that recognizing NEES's market pressure and cost of financing in establishing Granite State's cost of common equity is improper because NEES is not a party to this rate proceeding. All three expert witnesses utilized NEES's financial status to formulate their analysis of the cost of Granite State's common equity. Granite State does not publicly issue its own stock because it is a subsidiary of NEES. It follows that the cost of Granite State's common equity is the same as the cost to its parent, and this includes costs related to market pressure and cost of financing. We sustain the commission's determination of a .8% adjustment to Granite State's cost of common equity.

## IV

### Customer Deposits and Advances

The commission included $69,173 for customer deposits and $79,470 for customer advances in Granite State's rate base. A utility company requires customer deposits when a consumer has not yet established credit with it. The company pays the consumer six percent interest annually on the deposit. Customer advances are paid by consumers in order to facilitate the construction of power lines to serve them prior to the time when such construction is economically feasible for the utility company. Consumers are paid no interest on their customer advances. The LUCC challenges the inclusion of these items in the rate base.

■ In its report, the commission concedes that "[i]t has been customary practice . . . to adjust for customer deposits and customer advances by deducting them from rate base." The most significant example of the commission's exclusion of these items from the rate base and allowance of the interest costs thereon in the expense column is *Re Pub. Serv. Co.*, DR 77-49, 41 (Pub. Util. Comm'n 1978), *aff'd, sub nom., Legislative Util. Consumers' Council v. Pub. Serv. Co.*, 119 N.H. 332, 402 A.2d 626 (1979). The commission itself clearly enunciated the proper rule governing the treatment of customer deposits and customer advances when it stated that ratepayers "ought not to be required to pay a return on funds that they themselves have furnished." *Re New England Tel. & Tel. Co.*, 14 Pub. Util. Rep. 4th 295, 298 (N.H. Pub. Util.Comm'n 1976). Concerning the analogous issue of customer funds contributed in aid of construction (CIAC), we have held that "[s]uch funds, supplied by consumers, must be deducted from the rate base." *Windham Estates Ass'n v. State*, 117 N.H. 419, 422, 374 A.2d 645, 647 (1977); *accord*, 1 A. PRIEST, PRINCIPLES OF PUBLIC UTILITY REGULATION 177 (1969). To the extent that *Chicopee Mfg. Co. v. Public Service Co.*, 98 N.H. 5, 14, 93 A.2d 820, 827 (1953), suggests that the inclusion of consumer supplied capital in the rate base is a question of fact for the commission, it is overruled.

Even under the *Chicopee Mfg.* rule, the evidence in the present case does not support the commission's decision to include customer deposits and advances in the rate base. The commission's own expert witness, Donald Trawicki, testified that these items are not properly includible in the rate base. Granite State's assistant treasurer, Robert D. Saturley, in his supplemental testimony, advised the commission that as a result of discussions with staff and the intervenors, the company had withdrawn its proposal that these items be included in the rate base.

This State's law, the commission's practice, and the evidence presented at the hearings all demand that we remand this case to the commission for the limited purpose of deducting customer deposits and customer advances from the rate base, and for the purpose of making whatever adjustments in the overall rate of return as may be proper. *See Pub. Serv. Co. v. State*, 113 N.H. 497, 511, 311 A.2d 513, 522 (1973); *New England Tel. & Tel. Co. v. State*, 113 N.H. 92, 100, 302 A.2d 814, 820 (1973); *New England Tel. & Tel. Co. v. State*, 104 N.H. 229, 241, 183 A.2d 237, 246 (1962).

V

*Conclusion*

In summary, we sustain the commission's actions regarding attrition, depreciation, and cost of equity capital. We reverse its decision to include customer deposits and customer advances in the rate base, and remand the case to the commission directing it to deduct these items from the rate base and to establish a new rate order reflecting that deduction. Remand for this limited purpose will not unduly burden the commission and may be made on the record before it, *see Soc'y For The Protection of New Hampshire Forests v. Site Evaluation Comm.*, 115 N.H. 163, 175, 337 A.2d 778, 787 (1975), and it will serve the purpose of clearly establishing the ratemaking principle that customer deposits and customer advances are not includible in a public utility's rate base.

*Remanded.*

All concurred.